ALBERT J. LATENDRESSE, a/k/a Al Ryan, Plaintiff-Appellant, *v.* DANIEL MARRA *et al.*, Defendants.—(CHECKER TAXI CO., INC., Defendant-Appellee.)

First District (4th Division)   Nos. 62401, 63110 cons.

Opinion filed May 12, 1977.

James J. Andros, of Chicago, for appellant.

Jesmer & Harris, of Chicago (Francis X. Riley, of counsel), for appellee.

Mr. JUSTICE LINN delivered the opinion of the court:

Plaintiff, Albert J. Latendresse, a passenger in the cab of the co-defendant, Checker Taxi Co. Inc., sued for personal injuries sustained in a collision between the cab and an automobile. The trial was held before the court without a jury. Upon the conclusion of the plaintiff's case, the court entered a finding in favor of co-defendant, Checker Taxi, from which plaintiff now appeals.

The issues for review are (1) whether the trial court properly weighed the evidence and (2) whether the finding in favor of the defendant was against the manifest weight of the evidence.

We affirm the trial court.

On December 27, 1970, the plaintiff was a passenger in a Checker Taxi cab driven by Elias Chronopoulos, when it was struck by a 1966 Cadillac, driven by Daniel Marra. The plaintiff brought suit against Checker, Elias Chronopoulos, Daniel Marra, and Judy Barber, a passenger in the car driven by Marra, who is alleged to be a joint venturer with Marra.

In count 4 of the complaint, the plaintiff alleged, *inter alia*, that Chronopoulos and Checker were guilty of one or more of the following negligent acts or omissions: failure to take any evasive action to avoid collision; failure to maintain a proper lookout; failure to have seat belts in view of the passenger; operating a vehicle at an excessive rate of speed; failure to apply the braking mechanism of the vehicle when he knew or should have known a collision would ensue; and negligence in the maintenance, operation, management and control of their vehicle.

At trial, on June 19, 1975, the court found that Judy Barber was in default for failing to file an appearance or answer and further ordered that the defendants Chronopoulos and Marra be dismissed due to plaintiff's failure to exercise diligence in obtaining service of summons upon them. The trial proceeded against Checker.

Plaintiff testified that at about 6:40 p.m. on December 27, 1970, he and his wife left their home at the corner of Dickens and Clark in the City of Chicago and got in a Checker cab driven by Chronopoulos. The weather was cool and clear. The plaintiff noted that the cab shook when it stopped. He also stated that the cab jiggled. The plaintiff testified the driver looked foreign, and he could not always understand the driver and did not think that the driver could understand him.

Plaintiff's wife got out at 2600 North Clark, but plaintiff wanted to continue to Alcock's Inn at 946 Diversey, his place of employment where he played the piano and entertained. Plaintiff instructed the driver to turn west on Wrightwood and go to Halsted before turning north. The driver proceeded west on Wrightwood, but turned north on Orchard Street and then continued to go north on Orchard, a through street.

The plaintiff cautioned the driver to watch out for children when they went by a schoolyard. The plaintiff estimated the cab was going between 25 and 30 miles per hour at that time. When the driver slowed down to cross Schubert, he was going 20 or 25 miles per hour.

Just before they reached the intersection of Orchard and Schubert, the plaintiff saw a car approaching from the east on Schubert. He noticed the car because it had its lights on and it was a big car. Orchard being a through street did not have a stop sign controlling the flow of traffic but there was a stop sign for the westbound traffic on Schubert at its intersection with Orchard. The plaintiff saw the car when it was 50 or 60 feet away from the intersection and he estimated it was going 45 or 50 miles per hour. He knew it was going too fast to stop at the stop sign at the

intersection. He told the driver, "Watch that car" and observed that the driver was looking west, in the other direction. Plaintiff stated, "I guess he tried to get out of the way, I don't know."

When he warned the driver, he estimated the speed of the cab at 10 or 15 miles per hour. He could not recall whether the driver applied the brakes, but he knew they were not going fast enough to get out of the other car's way. After the collision he lost consciousness.

The plaintiff testified he spent two months in the hospital, and was not able to play the piano like he had before the accident. He would get numb and did not have the same coordination.

The defendant made a motion for a finding at the close of the plaintiff's case, and the court stated:

> "Under the Pedrick case, you have to make a prima facie case. Your client actually said that the cab driver didn't do anything wrong. Old model cab, that would be nothing that would be— proximately cause this accident. The fact that the driver looked to the right—there was this car coming that he saw going 50, 60 miles an hour * * *
>
> Motion will be allowed that Checker Cab will not be found guilty."

The court then entered judgment in favor of Checker Taxi and against defendant who had been defaulted, Judy Barber, in the amount of $100,000.

## OPINION

■■ It is clear from the report of proceedings that the court erroneously applied the *Pedrick* standard (*Pedrick v. Peoria & Eastern R. R. Co.* (1967), 37 Ill. 2d 494, 229 N.E.2d 504) when it made the finding in favor of the defendant. In *City of Evanston v. Ridgeview House, Inc.* (1976), 64 Ill. 2d 40, 57-58, 349 N.E.2d 399, 408, the court specifically held that *Pedrick* is not applicable in a trial without a jury and clarified the standard for weighing the evidence:

> "In ruling on the defendant's motion for judgment, therefore, the judge had the duty to pass on the credibility of the witnesses and consider the weight and quality of the evidence. In weighing the evidence, the court had the responsibility to consider all the evidence, including any favorable to the defendant. The court was not to consider the evidence in the light most favorable to the plaintiff."

Nevertheless, the plaintiff here was not prejudiced since the application of the *Pedrick* standard required that the court view all the evidence in the light most favorable to him. The application and use of a higher standard

than required by law, even though erroneously followed, did no harm to the plaintiff.

It is clear that on appeal the reviewing court must examine the evidence and determine whether or not the trial court erred in deciding the case contrary to the manifest weight of the evidence. *City of Evanston; Rosee v. Board of Trade* (1976), 43 Ill. App. 3d 203, 356 N.E.2d 1012.

■■ The law is well settled that a common carrier owes its passengers a duty to use the highest degree of care consistent with the mode of conveyance and the practical operation thereof. (*Holderness v. Checker Taxi Co.* (1969), 105 Ill. App. 2d 251, 245 N.E.2d 32.) We are sensitive to the plight of the plaintiff who has sustained serious injuries, however, a presumption that the carrier was negligent does not arise from the mere fact of an accident where the injuries result from a cause beyond the carrier's control. *Nilsson v. Checker Taxi Co.* (1972), 4 Ill. App. 3d 718, 281 N.E.2d 721; *Kirkwood v. Checker Taxi Co.* (1973), 12 Ill. App. 3d 129, 298 N.E.2d 233.

In the present case, the plaintiff testified that the weather was clear. The cab entered the intersection where the collision occurred going at about 20 to 25 miles per hour, which was not fast enough to avoid the collision. The plaintiff did not know whether the driver applied the brakes. The plaintiff further testified that when he warned the driver about the oncoming car, the driver was looking in the other direction, and he was not certain whether the driver could understand him because of the language problem. The high speed of the oncoming car restricted the cab driver's opportunity to avoid the collision.

■■ The inferences which may be drawn from the facts in this case suggest that the cab driver was maintaining a proper lookout but did not see the oncoming speeding vehicle which ran through a stop sign until it was too late to stop, speed up, or take other evasive action. The trial judge could properly conclude that the cab driver had done nothing wrong. We therefore determine that the judgment of the trial court was not against the manifest weight of the evidence but rather was proper and accordingly will be affirmed.

Affirmed.

JOHNSON and ROMITI, JJ., concur.