**DIERKS v. ALASKA AIR TRANSPORT, Inc. et al.**

**DREIBELBIS et al. v. ALASKA AIR TRANSPORT, Inc. et al.**

Nos. 6567–A and 6553–A.

District Court, Alaska.
First Division, Juneau.

Jan. 28, 1953.

696

R. E. Robertson, of Robertson, Monagle & Eastaugh, Juneau, Alaska, for plaintiffs, Dierks and Dreibelbis.

Joseph A. McLean, Juneau, Alaska, for defendant.

Robert Boochever of Faulkner, Banfield & Boochever, Juneau, Alaska, for intervenor.

FOLTA, District Judge.

The foregoing cases are treated as consolidated for the purpose of disposing of questions raised by motions.

The plaintiffs Dierks and Dreibelbis seek to recover more than $161,000 for injuries sustained by them in the crash of one of the defendant's airplanes on December 2, 1949, on which they were passengers, which they allege was caused by the negligence of the defendant. Intervenor American Casualty Co., insurance carrier in the Dierks case, as subrogee, and the plaintiffs Burroughs Adding Machine Company, employer, and Hartford Accident & Indemnity Co., insurance carrier in the Dreibelbis case, seek to recover amounts paid under the Workmen's Compensation Act.

Three questions emerge from the several motions:

(1) Are the first and third defenses of the plaintiff to the complaint in intervention and the first defense of the defendant, in the Dierks case, barred by the statute of limitations?

(2) Is the defense of act of God available and, if so, is it properly pleaded?

(3) Is the defense of assumption of risk available?

The Dierks case was commenced within the period fixed for personal injury actions by Section 55-2-7 A.C.L.A.1949, but the insurance carrier who paid the amount awarded under the Workmen's Compensation Act did not intervene to assert a right to share pro tanto in any recovery by Dierks until after the expiration of this period.

Section 43-3-30 provides:

"*Liability of third persons: Proceedings by employer: Subrogation to employee.* Where the injury for which compensation is payable hereunder was caused under circumstances creating a legal liability in someone other than the employer to pay damages in respect thereof, the employee may take proceedings against the one so liable to pay damages and against any one liable to pay compensation under this Act, but shall not be entitled to receive both damages and compensation. And if the employee has been paid compensation under this Act, the employer by whom the compensation was paid shall be entitled to indemnity from the person, firm or corporation so liable to pay damages as aforesaid and to the extent of such indemnity shall be subrogated to the rights of the employee to recover damages therefor."

Decision of the question stated turns on the construction given the section quoted. The intervenor contends that the statute of limitations referred to is not applicable, not only because the timely commencement of the plaintiff's action inured to its benefit, but also because its claim is contractual in nature rather than

tortious and, hence, is governed by the limitation for commencing actions in contract.

The soundness of the first contention would appear to depend on the existence of a community of interest between the intervenor and the plaintiff, 54 C.J.S., Limitations of Actions, § 276, page 311; 34 Am.Jur. 225. Whether such community of interest exists in this case depends on the nature of intervenor's right under the statute quoted. On principle and reason I am inclined to the view that the term "employer" should be construed to include his insurer, with the right of subrogation against the tort-feasor. Since the basis of this right to proceed against the tort-feasor is the cause of action of the employee, it follows that the same defenses are available against the intervenor as against the plaintiff, with the right of recovery depending on essentially the same proof. The underlying reason for the requirement of a community of interest as a prerequisite to allowing the subrogee to claim the benefit of a timely filing of the primary claim, is the avoidance of prejudice to the defendant that might ensue from delay unless the second claim and the proof required to establish it were essentially the same. Where this requirement can be met, sound policy dictates that both claims be litigated in the same action. Since the plaintiff and intervenor in the case at bar are pressing what is in essence a single cause of action, although their interests are several, I am constrained to hold that the timely filing by plaintiff of his claim inures to the benefit of the intervenor. Walton v. Louisiana Power and Light Co., La.App., 152 So. 760; Anno. 8 A.L.R.2d 90; Cf. Walsh v. Central Cold Storage Co., 324 Ill.App. 402, 58 N.E.2d 325, in which a contrary decision was reached under a statute materially different from ours.

■■ So far as the intervenor's second contention is concerned, it would appear from the express language of the statute that the right sought to be enforced is based on tort rather than on contract. The difficulty stems from the failure of the act to specify the nature of the employer's right in a case of this type. Manifestly,

the act should be construed so as to effectuate its purpose to provide prompt and adequate recovery for injuries. Undoubtedly the legislature realized that the recovery under the act might fall short of what an injured workman could obtain against a tort-feasor. It would appear, therefore, that the obvious solution was to allow the worker to recover the larger amount by invoking the remedy provided by the act, or by an action at law, but deny double recovery; and I am inclined to think that this is just what the legislature intended. Of course, at some point an election must be made, but the authorities indicate that an election need be made only upon receiving benefits or payments under a judgment and then only to the extent of such benefits or payments. Andersen v. Pacific Steamship Co., 8 Alaska 291. That case is authority for the proposition that the employer is a necessary party in this kind of action. It may be that if a worker obtains a double recovery, a contractual type action inures to the employer, but as against the tort-feasor, the employer's right would appear to retain its ex delicto nature, as indicated by the word "subrogation" in the act.

■ The plaintiff contends that the second defense in the Dierks case and the first defense in the Dreibelbis case, which is in the following language:

"That the weather and climatic conditions of the route over which defendant's airplane was flying, were reported as being favorable, but through an act of God and without fault of these defendants or their employees, a sudden and unexpected cross-current of air, attributable exclusively to natural causes, shifted the clouds and fog creating an adverse climatic condition brought about the crash landing for which no one is responsible and which reasonable foresight and care could not have prevented."

is insufficient to state the defense of act of God, because "(1) there is no allegation that the cross-current of air was of any extraordinary or even unusual character, or that any extraordinary results followed the cross-current of air and (2) that the

phrase 'an act of God caused the crash landing' is an insufficient statement under the Federal Rules which require more particularity and specification, so that if an act of God actually did take place, it is not properly pleaded and that the description of what took place does not satisfy the technical sense of act of God". And plaintiff argues, moreover, that sudden and unexpected currents of air are commonplace in Alaska in the fall.

Defendant asserts that it is well established that the defense of the act of God is available to common carriers and cites United States v. Kesinger, 10 Cir., 190 F.2d 529, where it was found that the aircraft owner was flying the plane at too low an altitude; that flying conditions were good; weather better than normal; wind 12 miles per hour and practically no turbulence. The defendant also argues that the statement of this defense fully complies with the requirements of Rule 8 and that plaintiffs' recourse is to a motion for a more definite statement rather than to a motion to strike.

It would appear, therefore, that the controversy is over whether the defendant must specifically plead that the wind-snowsquall-fog combination was such an unusual and extraordinary event as to be an act of God. Initially it should be pointed out that the defense states that an act of God occurred and caused the crash. This would appear to be a sufficient statement since it is not required that every element of such an occurrence be set forth. A legal conclusion is no longer frowned upon. It is adequate to apprise the plaintiff of what he must meet and the burden will be on the defendant to prove it. It should be noted also that it is alleged that the condition described was "sudden and unexpected" and that the accident could not have been prevented by "reasonable foresight and care". Taking the allegations as a whole, I am of the opinion that the defense is sufficiently pleaded and that the motion to strike should be denied.

The third defense in both cases is:

"That at the time plaintiff received the injuries mentioned in the complaint, he knowingly and voluntarily agreed by his actions and conduct, to assume all risk of damage and accident to his property and person, whether caused by the negligence of defendants or their employees, or otherwise."

It is too well settled to warrant extended discussion that a passenger on a common carrier does not assume the risk of injury to himself or his property due to the negligence of the carrier. Curtiss-Wright Flying Service, Inc., v. Glose, 3 Cir., 66 F.2d 710, certiorari denied 290 U.S. 696, 54 S.Ct. 132, 78 L.Ed. 599; Conklin v. Canadian-Colonial Airways, 266 N.Y. 244, 194 N.E. 692; Maynard v. Eastern Air Lines, Inc., 2 Cir., 178 F.2d 139, 13 A.L.R. 2d 646.