**Jim I. OWENS, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**Civ. A. No. 3968–66.**

United States District Court
S. D. Alabama, S. D.

Dec. 24, 1968.

Vincent F. Kilborn, Kilborn, Darby & Kilborn, Mobile, Ala., for plaintiff.

C. Don Conway, Asst. U. S. Atty., Mobile, Ala., for defendant.

DANIEL HOLCOMBE THOMAS, Chief Judge.

Plaintiff, a citizen and resident of Alabama, seeks to recover damages under the Federal Tort Claims Act, Title 28, United States Code 1346(b) as amended. The plaintiff alleges that agents and employees of the U. S. Agriculture Department poisoned his dairy cattle's water

supply and deprived him of useful pasture land by the negligent application of chemical insecticide on neighboring property while acting within the line and scope of their employment as employees of the United States.

This matter came on for trial on the 14th and 15th day of October 1968 without a jury and I make the following Findings of Fact and Conclusions of Law.

### FINDINGS OF FACT

In April 1964, the plaintiff owned a small herd of dairy cattle, numbering approximately 90 head. The plaintiff owned 101 acres of pasture land in western Mobile County on which his cattle grazed. The western boundary line of the plaintiff's property divided a small lake with approximately one acre of water actually being located on the plaintiff's side of the property line. The plaintiff testified that this small lake was the main source of drinking water for his herd. The evidence showed that the pond's water supply was maintained by rainfall and water drainage. Beginning on property lying to the east of the plaintiff's property, property hereinafter called the "Dodd Property", is a dry-bed drainage creek which runs diagonally, east to west, across the land adjoining to the plaintiff's and divides the plaintiff's property into north and south sections, finally ending and draining into the plaintiff's side of the lake. Normally this creek contained no stream but would become active after a rainfall from the water draining off the surrounding terrain.

On April 10, 1964, employees of the Department of Agriculture had chemically treated the "Dodd Property", including the banks of the drainage creek, with an insecticide called dieldrin. The majority of the treated property was used for nursery purposes and the chemical treatment of the soil was necessary

to destroy and control the white fringed beetles which are harmful to nursery plants. Due to the agriculture department's skill in soil treatment, it is customary for the government agents to treat the soil and charge the landowner for the services.

The granual or powdered form of dieldrin was used on the treated property and the Department's regulations call for three pounds of pure dieldrin per acre. When the powdered form of the chemical is used, it is diluted with another granual chemical at a ratio of nine pounds dilution to one pound pure dieldrin. After the chemical is spread on the land, it is required that it be disced into the top three inches of the soil. This is required not only for effective soil treatment, but as a preventive measure against erosion. On the afternoon of the 13th of April 1964 a heavy rainstorm occurred on the area, converting the dry-bed drainage creek into an active stream. Water draining from the treated property carried the chemical into the creek and eventually into the plaintiff's watering pond. Soon thereafter, at the request of the plaintiff, agents of the Department tested the plaintiff's water and found it to contain a significant amount of dieldrin, thus poisoned. At the expense of the government, a fence was erected on the plaintiff's property enclosing the creek and the pond. In total, 10 to 15 acres of the plaintiff's property was closed off to the dairy cattle.

The Department's regulations call for chemicals in diluted sprays to be used in land areas situated close to water.[1]

The plaintiff asserts that the agriculture employees were negligent in treating the soil in close proximity to the drainage creek with the powdered form of dieldrin.

As a direct result of this alleged negligence, the plaintiff claims that he lost the use of good pasture land, suffered a

---

1. Department Regulation 805–13.2120(d) "Dust or granules shall not be used near streams, lakes, ponds or reservoirs where particles may drift or wash into the water. Areas in close proximity to such water should be treated with dilute sprays."

reduction in milk production, had to drill a well to supply his herd with water and incurred additional expense in feed cost. The plaintiff also claims that the loss of the acreage, causing a greater concentration of his cattle, was the direct cause of his cattle contracting brucellosis, a disease commonly known as the "bangs disease". Eighteen or nineteen head of the dairy cattle had to be slaughtered after contracting the disease and the value of the herd was decreased when the plaintiff sold them.

The veterinarian who treated the plaintiff's diseased cattle testified that the brucellosis germ can be contracted by a concentration of cattle in a small area. The incubation period for the disease is in conflict, but may range from 15 days to as long as 300 days. The main symptom of the disease is the abortion of calves between the 6th and 7th month of pregnancy. Once a milk cow becomes diseased, it must be destroyed. In July 1965, some sixteen months after the chemical treatment of the soil, the disease was first discovered in plaintiff's herd.

The Government does not deny that the dieldrin poisoned the plaintiff's water, nor do they deny that the fence was constructed to keep the cattle from the area. The Government does deny negligence by its employees and asserts that the department's regulations were properly obeyed and only as a result of an unusual and unforeseeable heavy rainstorm, constituting an Act of God, did the water become poisoned. In support of this position, the Government offered evidence that the amount of rainfall in April 1964, as compared with recorded rainfall for April in previous years, was greatly out of proportion.

Alternatively, the Government contends that the lost acreage had no food or water value to the cattle, but contends that the enclosed property was swampy marsh land, thus asserting that the plaintiff suffered no damages and actually profited by the construction of the fence. The Government also denies any causal connection with the lost acreage to the cattle's contact with the bangs disease and claims that the plaintiff's pasture land was overstocked prior to this incident.

CONCLUSIONS OF LAW

I.

This Court has jurisdiction to hear this cause under the Federal Tort Claims Act, Title 28, Section 1346(b) U.S.C.A., as amended. It has been previously determined, in connection with the Government's motion for summary judgment, that the decision to chemically treat the soil was not a decision made in the exercise of a discretionary function within the meaning of 28 U.S.C. § 2680(a).

II.

In an action by a person in possession of real property against the United States Government for damages caused by the alleged negligence of employees of the Government in failing to exercise due care in the application of a poisonous insecticide, the burden is upon the person in possession to show there was a breach of the duty to exercise due care and that the breach of the duty by the Government was the cause of the plaintiff's injury or loss. Ray v. United States, 228 F.2d 574 (5 C.A.1956); United States v. Inmon, 205 F.2d 681 (5 C.A.1953). Whether or not the United States was guilty of actionable negligence through the actions of its agriculture employees is determined by the laws of Alabama. United States v. Croft-Mullins Electric Co., 333 F.2d 772 (5 C.A.1964).

The Court is aware that the drainage creek contained no moving water at the time of the chemical treatment. However, the agents of the Agriculture Department were familiar with this land area and knew that it was subject to heavy erosion. The supervisor of the job testified that debris, evidencing past flooding, had to be removed from the banks of the creek in order to disc the powdered chemical into the soil. The employees knew or should have

known that the dry-bed creek would transform into an active stream after a rainfall. From the record before the Court, the Court finds that the agents and employees of the Department of Agriculture were negligent in using powdered dieldrin in an area in close proximity to the creek.

## III.

Under the laws of Alabama, a finding of negligence is not sufficient for liability unless the negligent action was the proximate cause of the plaintiff's loss. Aggregate Limestone Co. v. Robison, 276 Ala. 338, 161 So.2d 820 (1964); Malone Freight Lines, Inc. v. McCardle, 277 Ala. 100, 167 So.2d 274 (1964). The Government claims that the heavy rainstorm constitutes an Act of God and was the proximate cause of the plaintiff's loss. To sustain the defense of an Act of God, the burden is upon the asserting party to prove that the Act was unforeseeable and unpredictable. Louisville & Nashville R. v. Finlay, 233 Ala. 128, 170 So. 207 (1936). The Government, in support of this position, offered evidence to show that the amount of rainfall for April 1964 was in excess of previous rainfall for the month of April. The Court does not decide if this evidence is sufficient to sustain the Government's burden of proof, for under the law of Alabama, it is not necessary for the Court to determine if the rainstorm of April 13, 1964, was an Act of God. If the rainstorm was not an unforeseeable Act of God, then there can be no doubt that the Government's negligence was the proximate cause of the chemical poisoning. If the rainstorm is determined to be an Act of God, the negligent Government still remains liable under Alabama law. In 1914, the Supreme Court of Alabama established a principle of law which is applicable in this case:

"Act of God—The rule imposing liability for negligence, although another efficient cause concurs, applies where the concurring cause is an accident or an Act of God, and the same is true where the primary cause was an accident for which the defendant was not liable, if the injury would not have resulted but for his negligence, or where, by ordinary care, the result might have been mitigated." Welch v. Evans Bros. Construction Co., 189 Ala. 548, 66 So. 517 (1914).

As in this case, the negligent defendant in the Welch case sought immunity from liability by claiming an intervening rainstorm to be an Act of God.

If the intervention of the defendant's negligence breaks the line of defense so that the loss is not directly caused by the Act of God, such Act is not a proximate cause, but the negligence of the defendant is the sole proximate cause. Louisville & Nashville R. v. Finlay, 233 Ala. 128, 132, 170 So. 207.

The Court concludes that the agents and employees of the federal government were negligent in the chemical treatment of the soil and such negligence was the proximate cause of the plaintiff's loss and the Government is liable for damages.

## DAMAGES

Having determined that the plaintiff is entitled to recover his damages from the Government, the Court must now ascertain just how much the plaintiff lost. The plaintiff offered no evidence, other than his personal testimony, to prove the amount of his damages. With no evidence, except testimony, to assist the Court, the evaluation of the plaintiff's loss becomes a difficult task.

The main difficulty stems from the property which the plaintiff lost as a result of the negligent chemical treatment. An aerial photograph of the property in question was introduced into evidence and after examining the same, the Court finds that the enclosed property was not good pasture land but did have some food and water value to the plaintiff's cattle. Notwithstanding this finding, the Court doubts that the plaintiff suffered a substantial loss in milk production and cattle weight. In deter-

mining the plaintiff's damage award the Court also took into consideration the plaintiff's testimony regarding expenses in drilling a well, increased feed cost and other additional expenses.

The Court finds no causal connection with the Government's negligence in April 1964, and the cattle's subsequent contact with the bangs disease in July 1965. The time element between the chemical application and the first indication of the bangs disease is far too remote for any causal association with the Government's action.

The Court finds that the plaintiff has suffered damages in the amount of $6,000.00 for which the Government is liable.

Order to be entered accordingly.