Carmelita WIDMYER, personal representative of the Estates of Peggy Rae Welch, Deceased, and Joshua John Welch, Deceased, and A. Dermott O'Toole, personal representative of the Estate of Dermott R. O'Toole, Deceased, Appellants,

v.

SOUTHEAST SKYWAYS, INC., and James Norvell, personal representative of the Estate of Richard James Norvell, a pilot of a DeHavilland Beaver # N9770Z, Appellees.

No. 3231.

Supreme Court of Alaska.

Aug. 25, 1978.

A. Lee Petersen, Fraties & Petersen, Anchorage, for appellants.

Burton C. Biss, Biss & Holmes, Wasilla, and Allan A. Engstrom, Juneau, for appellees.

Before BOOCHEVER, Chief Justice, RABINOWITZ, CONNOR, BURKE and MATTHEWS, Justices.

## OPINION

BOOCHEVER, Chief Justice.

On November 15, 1974, a DeHavilland Beaver airplane, owned by Southeast Sky-

ways, Inc., and piloted by Richard Norvell, crashed in the waters of False Bay, Chichagof Island, Alaska. The pilot and three passengers, Peggy Rae Welch, Joshua John Welch and Dermott R. O'Toole,[1] were killed in the crash. Appellants, Carmelita Widmyer and A. Dermott O'Toole, personal representatives of the estates of the deceased passengers, brought this action for wrongful death against appellees, Southeast Skyways, Inc., and James Norvell, personal representative of the estate of Richard Norvell.[2]

A jury returned a verdict for Skyways. Numerous issues have been raised on this appeal including the refusal of the trial court to instruct regarding: (1) the particular duty of care of a common carrier; (2) specific federal aviation regulations; (3) the doctrine of *res ipsa loquitur* and (4) the defense of "act of God." We have concluded that the court erred in failing to give the instruction on the duty of a common carrier and on *res ipsa loquitur* but did not err as to the federal aviation regulations and the defense of "act of God." We also believe that the trial court erred in permitting an expert witness to base his conclusions on the assumption that the pilot was not negligent. Since the case must be remanded for retrial, we do not find it necessary to pass on other issues raised which are not likely to recur on retrial.

The circumstances surrounding the crash of the airplane were in dispute at trial, and the parties and their experts presented various explanations concerning the probable or possible sequence of events culminating in the crash.

The airplane left Juneau on November 15, 1974 bound for Tenakee Springs. William Bernhardt, who piloted another plane from Juneau on the 15th bound for Basket Bay, testified that the weather at Juneau International Airport was generally "good" on that day. Both planes proceeded toward their destinations and, in so doing, travelled in a southerly direction down Chatham Strait which separates Admiralty and Chichagof Islands. Bernhardt observed Skyways' airplane in a parallel flight pattern near Hawk Inlet on Admiralty Island. A heavy snow squall was encountered by both airplanes. Bernhardt overtook Skyways' craft near Point Marsden on Admiralty Island; and, at that time, both airplanes were flying at an altitude of 50 to 100 feet. Bernhardt lost sight of the Skyways' craft when it executed a turn to the right, away from the Admiralty Island beach, and disappeared from view.

The Skyways' craft was next sighted on the Chichagof side of the Chatham Strait by Charles and Esther Kaze. The airplane was flying at low altitude near their cabin,[3] and it crashed a few seconds after they observed it. There was no change in the audible pitch of the motor prior to impact. It was snowing very hard, and visibility was poor. They found the craft wreckage in a vertical, nosedown position in rough[4] tidal water; there were no survivors.

James Nielson, a witness for the plaintiffs and an expert on accident reconstruction, testified that, in his opinion, the crash was due to a "stall/spin" that he attributed to pilot error. He stated that the pilot also was in violation of Visual Flight Rules (VFR) of the Federal Aviation Administration.[5]

William Bernhardt, who had observed the craft on the Admiralty side of the Strait, testified to his opinion that the pilot had crossed the Chatham Strait, looking for the Chichagof beach, which was not visible

1. Peggy Rae Welch and Dermott R. O'Toole were adult, fare-paying passengers. Joshua John Welch was the infant son of Peggy Rae Welch.

2. Hereafter, appellants Widmyer and O'Toole will be referred to as "plaintiffs"; and appellees Southeast Skyways, Inc., and Norvell will be referred to collectively as "Skyways."

3. The altitude was variously estimated at 100 feet, "as high as the trees" and 150–200 feet.

4. Charles Kaze estimated a six-foot swell.

5. VFR are distinguishable from IFR (Instrument Flight Rules), in that the latter are less stringent as to visibility and ceiling requirements, according to Nielson.

from Point Marsden; and that when he encountered the trees, he was forced to pull up and make a sharp turn, which stalled the aircraft.

Skyways' evidence focused on inclement weather as a cause of the accident. Harold Searby, a defense witness and an expert in meteorology, testified that the weather in Southeast Alaska on the day of the crash was unstable; and that, in his opinion, strong and severe turbulence existed in False Bay at the time of the crash.

Ray Renshaw, a defense witness and an expert on aviation in Southeast Alaska, testified to his opinion that Richard Norvell, whom he had supervised and trained, was an experienced pilot with approximately 3,000 hours of flight. He then testified to his opinion that, after completing his turn from the Admiralty side of the Chatham Strait, Norvell was in clear air; that he crossed the Strait and proceeded down a corridor on the Chichagof side in clear air; that he encountered a snow squall and attempted to land in False Bay when the craft was struck by an unexpected gust of wind; and that the crash was not due to pilot error.

Renshaw further stated that one of his assumptions was that Norvell did not commit pilot error. Plaintiffs' objections to expert testimony based on such an assumption were overruled.

At the conclusion of the trial, the court refused to give several of plaintiffs' proposed instructions. Requests for instructions relating to: (1) the duty of care imposed on a common carrier; (2) Federal Aviation Administration regulations; (3) the doctrine of res ipsa loquitur and (4) the "act of God" defense were denied.

The jury returned a verdict for Skyways, and this appeal followed.

## DUTY OF CARE OF A COMMON CARRIER

It is not disputed that Skyways owed plaintiffs' deceased a duty of care. The controversy on appeal concerns the nature of that duty.

Plaintiffs submitted the following proposed instruction to the court:

Common carriers owe a duty of utmost care and the vigilance of a very cautious person toward their passengers. They are responsible for any, even the slightest, negligence, and are required to do all that human care, vigilance and foresight reasonably can do under all the circumstances.

The instruction was not given; instead, the court instructed the jury regarding duty of care as follows:

Negligence is the doing of some act which a reasonably prudent person would not do; or the failure to do something which a reasonably prudent person would do, when prompted by considerations which ordinarily regulate the conduct of human affairs. It is, in other words, the failure to use ordinary care under the circumstances in the management of one's person or property, or of agencies under one's control.

Ordinary care is not an absolute term, but a relative one, that is to say, in deciding whether ordinary care was exercised in a given case, the conduct in question must be viewed in the light of all the surrounding circumstances, as shown by the evidence in the case.

The court indicated that its decision was based on *Patterson v. Cushman*, 394 P.2d 657 (Alaska 1964), which it interpreted as abolishing varying degrees of care in Alaska.

*Patterson* involved an injury to a child by an automobile. The plaintiffs sought instructions pertaining to: duty to maintain proper lookout, duty to "look out for children playing in or near the streets," higher duty of care owed by persons dealing with children, and higher duty of care of operators of motor vehicles toward children.[6] We found no error where the trial court followed an instruction which defined negligence as "the want of such care as an

**6.** 394 P.2d at 662 n.16.

ordinarily reasonable and prudent person would exercise under like circumstances"[7] with an instruction applying the standard to the operator of a motor vehicle. We did not require mention in the instructions of any greater care due a child since "the record disclose[d] that . . . the jury was made fully aware that the case involved a six-year old child playing on the street where the accident occurred."[8]

We held:

. . . there are no degrees of care as a matter of law and in the absence of any statute to the contrary, the trial judge need only instruct the jury that the defendant is required to exercise toward the plaintiff ordinary care under the circumstances.

■ Although there is no Alaska statute to the contrary, we believe that a general duty of due care instruction is inadequate with respect to common carriers transporting passengers for hire.[9] Singular treatment of common carriers is deeply rooted in common law and retains continuing validity in public policy.[10] Airline passengers are completely at the mercy of the carrier and are entitled to assume that the highest degree of care is being taken for their safety. To the extent that *Patterson* may foreshadow a different result, we decline to follow it in this instance.

To buttress its position, Skyways relies on *Webb v. City and Borough of Sitka*, 561 P.2d 731 (Alaska 1977), which abrogated the distinctions between trespassers, licensees and invitees and imposed a general duty on landowners to exercise reasonable care in view of all the circumstances. *Webb* is inapposite to the present situation. Different policy considerations were involved in abrogating the trespasser-licensee-invitee distinctions than are involved in the present case; and the result in *Webb* was an overall broader degree of responsibility imposed on landowners, while here responsibility would be decreased if only ordinary care were required. Further, it is notable that California has continued the higher standard of care as to common carriers[11] after it abrogated the trespasser-licensee-invitee distinctions.[12]

■ Skyways cites no case in which the higher degree of care imposed on common carriers has been abandoned. Indeed, the rule has been repeatedly reaffirmed.[13] We

7. *Id.* at 663 n.21.

8. *Id.* at 663.

9. Skyways does not deny that it is a common carrier.

10. Congress has recognized this policy. 49 U.S.C. § 1421 provides in part:
(a) [t]he Administrator [of the Federal Aviation Administration] is empowered and it shall be his duty to promote safety of flight of civil aircraft in air commerce by prescribing and revising from time to time [various standards, rules and regulations] . . .

(b) [i]n prescribing standards, rules, and regulations, and in issuing certificates under this subchapter, the Administrator shall give full consideration to perform their services with the *highest possible degree of safety* in the public interest . . . . (emphasis added)

11. *Acosta v. Southern California Rapid Transit District*, 2 Cal.3d 19, 84 Cal.Rptr. 184, 189, 465 P.2d 72, 77 (1970).

12. *Rowland v. Christian*, 69 Cal.2d 108, 70 Cal. Rptr. 97, 104, 443 P.2d 561, 568 (1968).

13. *Latendresse v. Marra*, 49 Ill.App.3d 266, 7 Ill.Dec. 664, 666, 364 N.E.2d 955, 957 (1977); *Orr v. New Orleans Public Service, Inc.*, 349 So.2d 417, 419 (La.App.1977); *Commodore Cruise Line, Ltd. v. Kormendi*, 344 So.2d 896, 897–98 (Fla.App.1977); *Delta Air Lines, Inc. v. Gibson*, 550 S.W.2d 310, 312 (Tex.Civ.App. 1977); *Jackson v. Bi-State Transit System*, 550 S.W.2d 228, 232 (Mo.App.1977); *Sabinasz v. Milwaukee and Suburban Transport Corp.*, 71 Wis.2d 218, 238 N.W.2d 99, 102 (1976); *Atlanta Transit System, Inc. v. Simpson*, 139 Ga. App. 34, 228 S.E.2d 20 (1976); *Mangini v. Southeastern Pennsylvania Transportation Authority*, 235 Pa.Super. 478, 344 A.2d 621, 623 (1975); *Brinkmoeller v. Wilson*, 41 Ohio St.2d 223, 325 N.E.2d 233, 235 (1975); *Ware v. Yellow Cab, Inc.*, 193 Neb. 159, 225 N.W.2d 565, 567 (1975); *Abdulla v. Pittsburgh and Weirton Bus Co.*, 213 S.E.2d 810, 817 (W.Va.1975); *Mass Transit Administration v. Miller*, 271 Md. 256, 315 A.2d 772, 774–75 (1974); *Smith v. Goforth*, 24 N.C.App. 104, 209 S.E.2d 887, 888 (1974); *Home Insurance Company v. Covington*, 255 Ark. 409, 501 S.W.2d 219, 221 (1973); *Acosta v. Southern California Rapid Transit District*, 84 Cal.Rptr. at 189, 465 P.2d at 77; *Grace v. Kumalaa*, 47 Haw. 281, 386 P.2d 872,

hold that the superior court erred in denying plaintiffs' proposed instruction.[14]

## FEDERAL AVIATION ADMINISTRATION REGULATIONS

Plaintiffs allege error in the superior court's failure to give the following proposed instruction:

Federal Aviation Regulations appropriate and pertinent to this case for the operation of an air taxi and commercial operation of small aircraft provide that:

1. Each pilot in command shall before beginning a flight, familiarize himself with all available information concerning that flight, including weather reports and forecasts, fuel requirements, alternates available if the planned flight cannot be completed;

2. No person may operate an aircraft in a careless or reckless manner so as to endanger the life or property of another;

3. No person may operate an airplane under visual flight rules in uncontrolled air space during the day when the ceiling is less than 1000 feet unless flight visibility is at least 2 miles;

4. Except when necessary for take off and landing no person may operate an airplane under visual flight rules during the day below 500 feet above the surface or less than 500 feet horizontally from any obstacle;

5. The pilot in command of an aircraft is directly responsible for and is the final authority as to the operation of that aircraft; and

6. A pilot is prohibited from operating an aircraft lower than 1,200 feet above the surface in uncontrolled air space unless flight visibility is at least one statute mile and unless the aircraft may be operated clear of clouds.

The court did not give the instruction, nor did it refer to Federal Aviation Administration regulations in instructing the jury. The proposed instruction was composed essentially of selected FAA regulations.[15]

The court rejected the instruction for the following reasons: (1) plaintiffs made no request during the trial that the court judicially notice the FAA regulations;[16] (2) plaintiffs' failure to request notice deprived Skyways of the opportunity to contest the applicability of any specific regulation and (3) the regulations were not within the matters that could be judicially noticed on the court's own motion.[17] The court concluded:

875 (1963); *Simpson v. Gray Line Company*, 226 Or. 71, 358 P.2d 516, 518 (1961); *Torrez v. Peck*, 57 Wash.2d 302, 356 P.2d 703, 705 (1960); *Publix Cab Company v. Fessler*, 138 Colo. 547, 335 P.2d 865, 868 (1959).

**14.** This instruction was specifically approved in *Acosta v. Southern California Rapid Transit District*, 84 Cal.Rptr. at 189, 465 P.2d at 77, and is in accord with pre-statehood Alaska law. *See Neal v. Matanuska Valley Lines, Inc.*, 118 F.Supp. 355, 358, 14 Alaska 513 (D.Alaska 1954); *Haldane v. Alaska Airlines*, 126 F.Supp. 224, 226, 15 Alaska 298 (D.Alaska 1954), applying to a carrier by air the rule that a common carrier is required to exercise the highest degree of care for the safety of its passengers and is liable for the slightest negligence.

**15.** *See* 14 C.F.R. §§ 91.5, 91.9, 135.93(a), 135.-91, 91.3(a), and 91.105(a). Point "1" of the proposed instruction incorporated a regulation applicable to IFR flights or flights "not in the vicinity of an airport." 14 C.F.R. § 91.5(a). The remainder are VFR regulations.

**16.** Plaintiffs had closed their rebuttal case prior to the hearing on proposed instructions; they

had not sought to introduce into evidence the regulations themselves.

**17.** The court relied upon Civil Rule 43(a), which provides in pertinent part:

(1) *Without Request—Mandatory.* Without request by a party, the court shall take judicial notice of the common law, constitutions and public statutes in force in every state, territory and jurisdiction of the United States, and of such specific facts and propositions of generalized knowledge as are so universally known that they cannot reasonably be the subject of dispute.

(2) *Without Request—Optional.* Without request by a party, the court may take judicial notice of:

[a] Private acts and resolutions of the Congress of the United States and of the Legislature of this state, and duly enacted ordinances and duly published regulations of governmental subdivisions or agencies of this state.

[b] The laws of foreign countries.

[c] Such facts as are so generally known or of such common notoriety within the territo-

This does not, however, preclude the plaintiffs from making reference in argument and certainly does not preclude the jury from considering what they heard in the way of testimony as to the regulations that was adduced at the trial. So I don't mean by this ruling that there cannot be discussion of the regulations on which evidence was given. But that I simply will not adopt an instruction which is not based on material that was evidence at the trial.[18]

Plaintiffs sought to invoke the regulations, as represented by the proposed instruction, to establish a standard of care or duty imposed upon Skyways. It was incumbent upon plaintiffs to seek to introduce the regulations into evidence.[19] In *Dunbar v. American Airlines, Inc.*, 376 P.2d 226, 229 (Okl.1962), the court refused to judicially notice federal aviation regulations, asserted for the first time on appeal as applicable to standard of care. The case is analogous in that the opposing party was not afforded an appropriate opportunity to rebut the regulations' applicability.

Federal regulations are not specifically included within the ambit of matters judicially noticeable under Civil Rule 43(a).[20] Plaintiffs argue that the regulations must be noticed under Civil Rule 43(a)(1) since they have been incorporated into Alaska law by reference under AS 02.05.080(d).[21] That statute, however, does no more than to require air carriers to show that they "can and will comply" with federal regulations before a certificate can be issued. AS 02.05.080(d) does not effect a wholesale incorporation of FAA regulations into the statute itself. We find no error in the superior court's denial of plaintiffs' proposed instruction.

## SCOPE OF PERMISSIBLE EXPERT TESTIMONY

Ray Renshaw, qualified as an expert, testified to his opinion that no pilot error occurred and that the sequence of events prior to the crash resulted in an accident caused by weather conditions. Renshaw's testimony is essentially an opinion concerning the issue of whether a duty of care was breached by Norvell.

Renshaw was asked the following question:

Q. You have heard the testimony, have you not, sir, of Mr. Bernhardt. Directing your attention to his testimony specifically to the effect that the last time that he observed the Beaver 70–Zulu, that it was still in a turn

rial jurisdiction of the court that they cannot reasonably be the subject of dispute.

[d] Specific facts and propositions of generalized knowledge which are capable of immediate and accurate determination by resort to easily accessible sources of indisputable accuracy.

(3) *On Request.* Upon the request of a party, the court shall take judicial notice of each matter specified in (2) of this subdivision if the requesting party furnishes the judge sufficient information to enable him properly to comply with the request and has given each adverse party such notice as the judge may require to enable the adverse party to prepare to meet the request.

18. Plaintiffs argued regulatory violation in closing, and testimony alluding to certain regulatory requirements was before the jury.

19. *See* Note 17, *supra.* The rule refers, *inter alia*, to federal statutes and statutes and regulations of "this state." Under the proposed Alaska Rules of Evidence, Rule 202(c) would permit a court to judicially notice federal regulations;

and Rule 202(d) would require a court to do so on request "if the requesting party furnishes sufficient information and has given each party notice adequate to enable the party to meet the request." Thus, even under the proposed Alaska Rules of Evidence, the trial court could have refused to notice the regulations.

20. The Supreme Court of Kansas has noted that federal regulations are frequently amended and that it is often necessary to determine which regulation was in effect at a given time. *Pacific Indemnity Company v. Berge*, 205 Kan. 755, 473 P.2d 48, 57 (1970).

21. AS 02.05.080(d) provides:

No certificate may be issued to a person to operate as an air carrier unless the applicant submits evidence satisfactory to the commission [the Alaska Transportation Commission] showing that it can and will comply with the provisions of the laws of the United States and the state, and the rules, regulations and orders respecting safety of operation.

and that at that time, both aircraft were being operated within VFR minimums and that further south inside the snow squall visibility was below VFR minimums and that at the time the Beaver started its turn in the vicinity of Point Marsden clear weather with visibility all the way to Chichagof Island existed approximately twenty seconds flying time to the north, and that the sea was too rough to land at Point Marsden. *Assuming* these observations as facts, sir, and with your knowledge of the area, the weather, the aircraft and *the capabilities of the pilot Richard Norvell*, do you have an opinion as to why he turned the aircraft? (emphasis added)

Over vigorous objection, Renshaw was permitted to testify to his opinion that, after completing his turn from the Admiralty side of the Chatham Strait, Norvell was in clear air; that he crossed the Strait in clear air; that he proceeded down a corridor on the Chichagof side in clear air; that he encountered a snow squall and attempted to land in False Bay when the craft was struck by an unexpected gust of wind and that the crash was not due to pilot error.

Plaintiffs argue that Renshaw's testimony as to the flight pattern of the craft prior to the accident was speculative and that it was based on an impermissible assumption: that there had been no pilot error. On cross-examination, Renshaw admitted that his opinion was based in part on an assumption of no error:

Q. I would like a direct answer, if you don't mind, sir. Part of your basic assumption is that the pilot did not commit error, is that not true?

A. That's true.

    *    *    *    *    *    *

Q. Your final observation on direct, as I recall, was that, "If what I described happened, there was no pilot error."

A. Right. If he was caught that way, there wouldn't be pilot error.

Q. Isn't it true, Mr. Renshaw, that your real opinion is that since the pilot didn't commit error, this is what had to happen?

A. Well, as I said before, you try to find some logical explanation for it.

    *    *    *    *    *    *

Q. You stand with your former testimony, don't you, Mr. Renshaw, that the basis to your assumption is that the pilot did not commit error on the stick?

A. Yes, that's correct.

After Renshaw completed his testimony, plaintiffs moved to strike the part of the opinion based on a theory of no error. The motion was denied.[22]

We have adopted a liberal position with respect to expert testimony.[23] Alaska law permits an expert, under proper circumstances, to testify on an ultimate issue.[24] The standard is whether a jury "could receive appreciable assistance from the opinion of the witness."[25] The opinion, how-

---

22. The following exchange took place between plaintiffs' counsel and the court:

THE COURT: . . . I will instruct them, if they don't believe the assumption, then they should not believe the opinion. But I think there is sufficient evidence that I must view this most favorably to the defendant for the purposes of a motion of this kind. I think there is sufficient evidence that the jury could believe the opinion based on assumptions of fact that are in the record.
MR. FRATIES: Your Honor, is not the witness' conclusion that this pilot could not have committed error, his own basic instinct?
THE COURT: That's true.
MR. FRATIES: What does that have to do with fact?

THE COURT: Based on his experience and all the conditions. The motion to strike is denied . . .

23. *Haisley v. Grant*, 486 P.2d 367, 371 (Alaska 1971); *Maddocks v. Bennett*, 456 P.2d 453, 454–56 (Alaska 1969).

24. *Adkins v. Lester*, 530 P.2d 11, 16 (Alaska 1974); *Ferrell v. Baxter*, 484 P.2d 250, 268–69 (Alaska 1971); *Oxenberg v. State*, 362 P.2d 893, 900 (Alaska), *cert. denied*, 368 U.S. 56, 82 S.Ct. 189, 7 L.Ed.2d 128 (1961).

25. *Crawford v. Rogers*, 406 P.2d 189, 192 (Alaska 1965). *See also, Haisley v. Grant*, 486 P.2d at 371; *Maddocks v. Bennett*, 456 P.2d at 455.

ever, must be based on "sufficient facts,"[26] a matter normally a question for the jury.[27] In *Maddocks v. Bennett*, we stated:

> [I]f the trial judge felt that the jury could receive appreciable assistance from the opinion of the expert witness, this court would not interfere with his exercise of discretion in allowing the testimony to go to the jury, in the absence of an abuse.[28]

Where, however, an opinion is based on facts not in evidence so that no jury could find "sufficient facts" to support the opinion, it is an abuse of discretion to permit the testimony.[29]

Here, Renshaw testified that Norvell was an "experienced" pilot and was "careful and competent." These characterizations were proper as opinions based on matters within Renshaw's personal expert knowledge,[30] and the jury could consider that opinion in determining whether Norvell was negligent on the day in question. Renshaw went further, however, and assumed no negligence on the part of the pilot as a basis for his conclusion that pilot error did not cause the crash.

■ We find that Renshaw's testimony exceeded the range of permissible expert opinion and hold that the superior court erred in overruling plaintiffs' objections and denying their motion to strike, insofar as they related to expert opinion premised on an assumption of no pilot error. An expert may testify to his opinion regarding the capabilities of a pilot with whom he is familiar and may state his hypothesis as to how, under the circumstances, a careful and prudent pilot could have crashed his plane without negligence. An expert may not, however, assume the absence of negligence by a particular pilot on a particular occasion and then offer his opinion that, since there was no pilot error, the crash must have occurred in a particular manner. Even careful and prudent pilots are capable of acts of negligence, and an expert may not construct an opinion as to the cause of a particular crash based on the foreclosure of this possibility.

To the extent that Renshaw's opinion was founded on an assumption that the pilot was not negligent, it was based on a fact not in evidence. Professor Wigmore notes a policy consideration regarding expert testimony:

> The jury are apt, especially where there are many expert witnesses and the evi-

---

26. *Haisley v. Grant*, 486 P.2d at 371.

27. *See Northern Lights Motel, Inc. v. Sweaney*, 561 P.2d 1176, 1189 (Alaska 1977). The jury was instructed as follows:

> You should consider each expert opinion received in evidence in this case, and give it such weight as you may think it deserves. If you should decide that the opinion of an expert witness is not based upon sufficient education and experience, or if you should conclude that the reasons given in support of the opinion are not sound or if you feel that it is outweighed by other evidence, you may disregard the opinion entirely.
>
> In examining an expert witness counsel may propound to him a type of question known in the law as a hypothetical question. By such a question, the witness is asked to assume to be true a hypothetical state of facts, and to give an opinion based on that assumption. In permitting such a question, the court does not rule, and does not necessarily find even in its own mind, that all the assumed facts have been proved. It only determines that these assumed facts are within the possible range of the evidence.
>
> It is for you, the jury, to find from the evidence whether or not the facts assumed in a hypothetical question have been proved, and if you should find that any assumption in such question has not been proved, you are to determine the effect of that failure of proof on the value and weight of the expert opinion based on the assumption.
>
> Failure to prove a fact assumed in a hypothetical question may make the opinion based on it entirely worthless, or the opinion may, nevertheless, have weight and value, depending on the relationship of such an assumed fact to the issues of the case, the facts proved and the expert opinion. In respect to such a matter, you will apply your own reasoning to the end of drawing a conclusion that will be just and sound.

28. 456 P.2d at 455, *quoting, West v. Administratrix of Estate of Nershak*, 440 P.2d 119, 121 (Alaska 1968).

29. This approach is implicit in *Zerbinos v. Lewis*, 394 P.2d 886, 888 (Alaska 1964).

30. Renshaw had supervised and trained Norvell.

dence is voluminous, to remember and accept merely the net opinion of a witness, with little or no reference to the special premises on which it was based.[31] Professor Jones states: "Nor should the opinion of an expert witness be invoked to supply a fact necessary to support his conclusion."[32]

We do not find it necessary to determine whether, in light of plaintiffs' cross-examination, argument[33] and the jury instructions,[34] this error was harmless,[35] since reversal on other grounds is warranted in any event.

## RES IPSA LOQUITUR

Plaintiffs allege error in the superior court's denial of their proposed instruction on the doctrine of *res ipsa loquitur.*

The doctrine of *res ipsa loquitur,* meaning "the thing or transaction speaks for itself," permits a finding of negligence from the circumstances surrounding the injury.[36] It does not allow negligence to be established from the mere fact of injury itself.[37] The doctrine, where applicable, is a bridge, dispensing with the requirement that a plaintiff specifically prove breach of duty,[38] once that duty and proximate cause have been established.[39]

Plaintiffs requested an instruction stating in part:

From the happening of the accident involved in this case, you may draw an inference that a proximate cause of the occurrence was some negligent conduct on the part of the defendant.

However, you shall not find that a proximate cause of the occurrence was some negligent conduct on the part of the defendant unless you believe, after weighing all the evidence in the case and drawing such inferences therefrom as you believe are warranted, that it is more probable than not that the occurrence was

31. Wigmore on Evidence, § 682 at 808 (3d ed. 1940). Although this caveat was posited in regard to hypothetical questions, it is a relevant consideration in general. In any event, the hypothetical posed to Renshaw contained the following language: "Assuming . . . your knowledge of the . . . capabilities of the pilot, Richard Norvell. . . ."

32. Jones on Evidence, § 14.27 at 659 (5th ed. 1972).

33. Appellants commented extensively on Renshaw's assumption in their closing argument.

34. *See* Note 27 *supra.*

35. An error is harmless if the court can say, with fair assurance, that the jury was "not substantially swayed or affected by the error." *Adkins v. Lester,* 530 P.2d at 18; *Love v. State,* 457 P.2d 622, 631 (Alaska 1969).

36. Speiser, The Negligence Case: Res Ipsa Loquitur, § 1:1 at 2–3 (1972). *See also, Crawford v. Rogers,* 406 P.2d at 193.

37. Speiser, *supra* Note 36 at 2–3.

38. *Crawford v. Rogers,* 406 P.2d at 193.

39. Sec. 328 D of the Restatement of Torts (Second) (1965) provides:
(1) It may be inferred that harm suffered by the plaintiff is caused by negligence of the defendant when
(a) the event is of a kind which ordinarily does not occur in the absence of negligence;
(b) other responsible causes, including the conduct of the plaintiff and third persons, are sufficiently eliminated by the evidence; and
(c) the indicated negligence is within the scope of the defendant's duty to the plaintiff.
(2) It is the function of the court to determine whether the inference may reasonably be drawn by the jury, or whether it must necessarily be drawn.
(3) It is the function of the jury to determine whether the inference is to be drawn in any case where different conclusions may reasonably be reached.
The Restatement comment pertaining to § 328 D(1)(b) reads:
*Eliminating other responsible causes.* It is never enough for the plaintiff to prove that he was injured by the negligence of some person unidentified. It is still necessary to make the negligence point to the defendant. On this too the plaintiff has the burden of proof by a preponderance of the evidence; and in any case where there is no doubt that it is at least equally probable that the negligence was that of a third person, the court must direct the jury that the plaintiff has not proved his case. Again, however, the plaintiff is not required to exclude all other possible conclusions beyond a reasonable doubt, and it is enough that he makes out a case from which the jury may reasonably conclude that the negligence was, more probably than not, that of the defendant. *Id.* at 160.

caused by some negligent conduct on the part of the defendant. . . .[40]

The instruction was rejected, and the following instruction was given:

> The mere fact that an accident happened, standing alone, does not permit the jury to draw the inference that the accident was caused by anyone's negligence.

■ The doctrine of *res ipsa loquitur* is recognized law in Alaska and in nearly all jurisdictions in the United States.[41] Traditionally, the doctrine has been applied when the following requirements are met:

1) the accident is one which ordinarily does not occur in the absence of someone's negligence;

2) the agency or instrumentality is within the exclusive control of the defendant;

3) the injurious condition or occurrence was not due to any voluntary action or contribution on the part of the plaintiff.[42]

Before these requirements are examined, however, two preliminary issues will be discussed.

■ The first concerns the applicability of *res ipsa loquitur* when specific acts of negligence are alleged. Although there is a split of authority on whether the doctrine is applicable to cases in which the plaintiff introduces specific evidence of negligence,[43] Alaska does not preclude use of the doctrine unless the specific acts furnish a "complete explanation" of the accident.[44] We have declined to apply *res ipsa loquitur* in an air crash case when the injured plaintiff, the only passenger, testified to specific acts of the pilot prior to the crash. We stated:

> . . . if the evidence discloses the circumstances of the accident to the extent that there is nothing left to infer, then the doctrine of res ipsa loquitur, which is founded upon inference, is no longer needed.[45]

Skyways argues that plaintiffs proffered a "complete explanation" here:

> . . . plaintiffs' evidence, if believed, was that Norvell flew blindly into a snow squall at low altitude, stalled his aircraft in an attempt to avoid some trees, and crashed. . . . There was accordingly nothing left to infer.

We do not agree. It would follow from Skyways' argument that, whenever an expert gives an opinion as to the cause of a

---

**40.** An additional instruction was requested stating:

> The operation of this DeHavilland Beaver aircraft was in the exclusive control and possession of Southeast Skyways. I charge you that that is an established fact.
> Ordinarily, airplanes don't crash during normal operations. Accordingly, I charge you, that, although you may conclude that certain specific acts of negligence that have been suggested to you did not occur, it is not essential that you find, in order to find a defendant liable, that they were negligent as specifically suggested.
> The evidence indicates, as I have charged you, that the defendant had exclusive control of the airplane. Thus if you do not believe that defendant, through its pilot or agent was negligent in a particular or specific manner claimed you may still infer, and bear well in mind this word "may," you may still infer from the very happening of the crash, since it was not an ordinary event happening in the normal course of the flight, that this crash was occasioned by some negligent act or acts of the pilot.
> This is an inference which you may draw, but you are not required to draw such an infer-

ence. The fact that you are permitted to draw this inference does not shift the burden of proof from the plaintiff to the defendant in any way, nor does the fact that the law permits you to draw such an inference shift the burden of offering an explanation of how the accident happened or why it happened. The burden of proof still rests with the plaintiffs in establishing to your satisfaction by fair preponderance of the evidence, that the negligence of the defendant was more likely than not a substantial factor in bringing about the crash and the plaintiffs' resulting death.

**41.** *Crawford v. Rogers,* 406 P.2d at 193. *See* Speiser, *supra* Note 36, § 1:1 at 4.

**42.** Speiser, *supra* Note 36, § 2:1 at 30–31; *Patrick v. Sedwick,* 391 P.2d 453, 456 n.8 (Alaska 1964). *See also, Ybarra v. Spangard,* 25 Cal.2d 486, 154 P.2d 687, 689 (1944).

**43.** *See* Speiser, *supra* Note 36, §§ 5:9–5:17.

**44.** *Crawford v. Rogers,* 406 P.2d at 193.

**45.** *Id.*

crash and is corroborated in part by witnesses, no *res ipsa loquitur* instruction is permitted. Of note is the fact that in the Alaska cases which have applied this "complete explanation" standard regarding evidence of specific acts of negligence, there has been direct, rather than circumstantial evidence: in each case, a witness directly involved at the time of the occurrence had been available to testify.[46]

We have previously referred to the applicability of *res ipsa loquitur* only in cases with "incomplete *factual* descriptions.[47] We do not find that in the present case in which heavy reliance was placed by both parties on inferences of expert witnesses, that a complete *factual* explanation was offered. There were matters of considerable uncertainty, including the exact path of the plane from the Admiralty to the Chichagof side of the Chatham Strait and the precise sequence of events which occurred immediately prior to the crash. In an accident in which there are no survivors to testify and no other direct evidence of the cause, we do not believe that plaintiffs should be precluded from utilizing the doctrine of *res ipsa loquitur* because they have offered a possible explanation to the jury.[48]

■ The second preliminary issue involves the question of superior knowledge. The superior court specifically noted Skyways' lack of superior knowledge as to the cause of the crash in denying a *res ipsa loquitur* instruction. In this case, neither party possessed superior knowledge: both were equally ignorant of the facts which occurred immediately prior to the crash.

A pre-statehood federal case,[49] discussed this issue and applied *res ipsa loquitur* in a wrongful death case in which plaintiffs'

deceased were lost in an airplane which disappeared without a trace on a flight from Yakutat, Alaska to Seattle, Washington. The court stated:

An examination of the authorities in support of the rule . . . [precluding the application of the doctrine where plaintiff's knowledge is equal to that of the defendant] . . . discloses that it is applied to cases where the plaintiff has equal knowledge or where knowledge of the cause is equally accessible to the plaintiff—not to cases in which there is an equality of ignorance *as* in the instant case. Since inability, because of a lack of knowledge, to show specific acts of negligence is a prerequisite to the application of the doctrine itself, it follows that equality of knowledge precludes its application. But from this it does not follow that conversely equality of ignorance will likewise preclude applicability, for the function of the doctrine . . . is to supply a fact, i. e., defendant's negligence, which must have existed in the causal chain stretching from the act or omission by the defendant to the injury suffered by the plaintiff, but which the plaintiff because of circumstances surrounding the causal chain, cannot know and cannot prove to have actually existed.

Skyways cites no Alaska case specifically requiring superior knowledge on a defendant's part as to the immediate cause of a crash before *res ipsa loquitur* may be invoked.[50] There are no compelling reasons to apply such a rule to an aircraft accident in which there are no survivors and in which the parties place heavy reliance upon expert testimony. Moreover, while the carrier may not have superior knowledge as to

---

**46.** *Ferrell v. Baxter,* 484 P.2d at 252–55; *Crawford v. Rogers,* 406 P.2d at 193; *Schenderline v. Robertson,* 394 P.2d 395, 396 (Alaska 1964); *Patrick v. Sedwick,* 391 P.2d at 456; *Evans v. Buchner,* 386 P.2d 836, 837 (Alaska 1963).

**47.** *Ferrell v. Baxter,* 484 P.2d at 258 (emphasis added).

**48.** *See Fields v. Berry,* 549 S.W.2d 122, 125–26 (Mo.App.1977).

**49.** *Haasman v. Pacific Alaska Air Express,* 100 F.Supp. 1, 2, 13 Alaska 439 (D.Alaska 1951), *aff'd sub nom., Des Marais v. Beckman,* 198 F.2d 550, 13 Alaska 745 (9th Cir. 1952), *cert. denied,* 344 U.S. 922, 73 S.Ct. 388, 97 L.Ed. 710 (1953) (citations omitted).

**50.** This view has been adopted in some jurisdictions. *See generally,* Speiser, *supra* Note 36, § 2:25 at 83–84.

the specific circumstances at the time of the crash, it has superior knowledge as to the characteristics of the particular airplane involved, its maintenance, the training and instruction of its pilots and its general operating procedure under varying conditions.

■ We now return to analysis of the three traditional prerequisites to the applicability of *res ipsa loquitur*: an accident that normally does not happen without negligence; exclusive control of the instrumentality by the defendant; and absence of voluntary action or contribution by the plaintiff.

The requirements are, in essence, "foundation facts," which must be established before invoking the doctrine.[51]

> Since it is not the mere fact of injury itself, but the circumstances surrounding the injury, which justify the application of the doctrine, the applicability of the doctrine must depend on the peculiar facts and circumstances of each case. (footnotes omitted)[52]

Skyways relies primarily on the weather conditions incident to the crash to refute plaintiffs' argument that the requirements have been met. Weather conditions, however, are not material to the issue of plaintiff contribution. Accordingly, we shall first address this prerequisite.

Plaintiff contribution is not the equivalent of contributory negligence. Instead, the former term refers to the question of control: the doctrine of *res ipsa loquitur* will not apply if the plaintiff had control of the instrumentality.[53] Skyways argues that plaintiffs have not established lack of

plaintiff contribution, since the passengers could have interfered with the controls. Reliance is placed on *Crawford v. Rogers*, 406 P.2d 189 (Alaska 1965), a case in which there was evidence of passenger interference before the court.[54] Here, however, there was no evidence regarding passenger interference presented by any of the parties.

■ If the requirement of no plaintiff contribution is strictly applied, no *res ipsa loquitur* instruction could be given where the plaintiff lacks sufficient evidence, or any evidence, upon which to prove a negative. Yet, such an instruction was given in *Haasman v. Pacific Alaska Air Express*,[55] where the airplane disappeared without a trace. We believe that there must be some evidence upon which a jury could find plaintiff contribution before a *res ipsa loquitur* instruction can be denied for this reason. In the face of a silent record, the conclusion that a passenger did not interfere with the operation of an aircraft is much more compelling than the conclusion that he did interfere.

While it is clear that *res ipsa loquitur* is applicable in general to aviation cases,[56] it is not necessarily applicable to every such case since the specific circumstances will vary. Weather may impinge upon the first prerequisite for *res ipsa loquitur* in that it may contribute to a set of circumstances in which it is not more likely than not that the crash was caused by the defendant's negligence. Again, the totality of the circumstances must be considered in each factual setting.[57]

---

**51.** Speiser, *supra* Note 36, § 2:1 at 32.

**52.** *Id. See also,* § 1:2 at 6:

. . . the circumstances attendant on the accident [must be] of such a nature as to justify a jury, in the light of common sense and past experience, in inferring that the accident was probably the result of the defendant's negligence, in the absence of explanation or other evidence which the jury believes. (footnotes omitted)

**53.** *Id.,* § 2:25 at 82.

**54.** 406 P.2d at 192. Expert testimony was presented that the passenger rudder on a dual control plane had been depressed.

**55.** *See* Note 49, *supra.*

**56.** *See generally,* Kreindler, Aviation Accident Law, § 3.09[2] at 3–17 (1974). There is an increasing trend toward invoking the doctrine as aviation has evolved from an adolescent, novel and risky industry to one of relative safety. *Id.,* § 3.09[2] at 3–17 to 3–20.

**57.** *See* Speiser, *supra* Note 36, §§ 1:1 and 2:1 and Note 52, *supra.*

Cases involving in-flight injuries to passengers as a result of bumps, lurches or jerks of an aircraft in turbulence do not give rise to the application of the doctrine.[58] In cases involving crashes, some courts, in applying *res ipsa loquitur,* have specifically noted the absence of evidence of weather as a causative factor.[59]

■ To require a plaintiff to show that a crash was not caused by weather, as a prerequisite to the application of *res ipsa loquitur,* presents the problems inherent in proving a negative. Again, a strict application of this requirement would have disallowed the *res ipsa loquitur* instruction in *Haasman,* where the plane disappeared without a trace. We will not require a plaintiff to negate the possibility of weather as a cause of an airplane crash in order to obtain the benefit of a *res ipsa loquitur* instruction.

The general safety record of air travel and the present state of air technology[60] compel us to conclude that air crashes do not normally occur absent negligence, even in inclement weather. In *Alaska Airlines, Inc. v. Sweat,* 568 P.2d 916, 925 (Alaska 1977), we stated:

> [A]ir travel may no longer be regarded as inherently dangerous and . . . flights aboard certified carriers do not involve an unreasonable risk of harm.

■ Thus, under the circumstances of this case, we find no reason to preclude the applicability of the doctrine of *res ipsa loquitur.* We find the lack of an instruction on the doctrine to be error.

**58.** *See generally,* Prosser on Torts, § 39 at 216–17 (4th ed. 1971); Kreindler, *supra* Note 56, § 3.09[3][a] at 3–20 to 3–23.

**59.** In *Newing v. Cheatham,* 15 Cal.3d 351, 124 Cal.Rptr. 193, 200, 540 P.2d 33, 40 (1975), the Supreme Court of California held that *res ipsa loquitur* applied as a matter of law, based in part on lack of evidence that weather caused the crash of an airplane. *See also, Norden v. United States,* 187 F.Supp. 594, 595 (D.R.I. 1960) (*res ipsa loquitur* applicable to plane crash in clear weather).

**60.** *See generally,* Kreindler, *supra* Note 56, § 3.09[2] at 3–17 to 3–20.

## "ACT OF GOD" DEFENSE

■ More than sixty years ago, the Supreme Court of Kansas defined "act of God" as an:

> irresistible superhuman cause such as no ordinary or reasonable human foresight, prudence, diligence, and care could have anticipated and prevented.[61]

In order for an "act of God" to preclude liability in negligence, two elements must be present: the occurrence alleged to be an "act of God" must be such that it was incapable of being avoided by reasonable care or foreseen by reasonable prudence; and the resultant injury must have come about without the intervention of any human agency.[62]

■ In the instant case, Skyways presented evidence that weather was the cause of the crash. Plaintiffs requested the following instruction:

> The defendant in this case relies on the defense of an act of God. In such a defense, the defendant must prove not only the existence of the act of God, but that the act was the sole proximate cause of damages about which plaintiff complains, and that he, the defendant, was free from concurrent negligent participation in the proximate cause.
>
> The defendant has the burden of proving such an affirmative defense by a preponderance of the evidence.

The superior court denied the instruction, noting that it was unnecessary since the defense was not "genuinely of a nature to be an affirmative defense" and could "come

**61.** *Garrett v. Beers,* 97 Kan. 255, 155 P. 2, 3 (1916). *See also,* Rundall, " 'Act of God' as a Defense in Negligence Cases," 25 Drake L.Rev. 754 (1976); Prosser on Torts, § 51 at 324 (3d ed. 1964): an "act of God" is an "unforeseeable force of nature"; *Manila School District No. 15 v. Sanders,* 226 Ark. 270, 289 S.W.2d 529, 531–32 (1956).

**62.** *See* Rundall, *supra,* Note 61 at 754; Note, 37 Notre Dame Lawyer 734, 736 (1962). *See also, Parrish v. Parrish,* 21 Ga.App. 275, 94 S.E. 315, 316 (1917).

in under the general denial of negligence." The jury was told that they should find liability if they found the defendant to be negligent and if they further found that such negligence was a proximate cause of the crash.[63] The requested "act of God" instruction in substance stated the same thing in the negative. Essentially, under the requested instruction, the jury would have been told that the defendants were not liable: (1) if they were not negligent; or (2) if they were negligent, but such negligence was not a proximate cause of the injury.[64] The majority of this court finds no error in the refusal to give the requested instruction.[65]

REVERSED AND REMANDED.

---

**63.** The jury was instructed on proximate cause as follows:

Proximate cause is to be determined as a fact in view of the circumstances attending it. It is that cause which naturally leads to, and which might have been expected to have produced, the result. The connection of cause and effect must be established. And if a cause is remote and only furnished the condition or occasion of decedent's death, it is not the proximate cause thereof. The proximate cause is a cause which would probably, according to the experience of mankind, lead to the event which happened, and remote cause is a cause which would not, according to such experience, lead to such an event. There can be no recovery on account of negligence of another which was not the proximate cause of the death complained of.

**64.** By analogy, we have held that "unavoidable accident" is not an affirmative defense and should not be the subject of an instruction. *Maxwell v. Olsen,* 468 P.2d 48, 54–55 (Alaska 1970); *Alaska Brick Co. v. McCoy,* 400 P.2d 454, 456 (Alaska 1965); *Mitchell v. Knight,* 394 P.2d 892, 895–96 (Alaska 1964); *Harrison v. Garner,* 379 P.2d 948, 949 (Alaska 1963).

**65.** The author of this opinion believes that it was error not to give the requested instruction. The defendant alleged as an affirmative defense that an unforeseeable "act of God" over which the defendants had no control caused the crash. This is more than a mere denial of breach of duty to the plaintiff or a denial that any such breach proximately caused the crash.

It is an affirmative allegation of an independent cataclysmic cause. Evidence was introduced as to the likelihood of severe turbulence and an unexpected gust of wind causing the crash. Assuming that the evidence was sufficient to raise the issue of "act of God," I believe than an instruction should have been given placing the burden of proof on the defendant. Otherwise, the jury might be left with the impression that, under the general instruction that the plaintiff sustain the burden of proof, it would be necessary for the plaintiff to negate the likelihood of the crash being caused by such natural phenomena. It seems to me that such burden is better placed on the party alleging such a causal condition. *See Wm. G. Roe & Company v. Armour & Company,* 370 F.2d 829, 831 (5th Cir. 1967) (Florida law); *Owens v. United States,* 294 F.Supp. 400, 404 (S.D.Ala. 1968) (Alabama law); *Dierks v. Alaska Air Transport,* 109 F.Supp. 695, 698, 14 Alaska 159 (D.Alaska 1953); *Sky Aviation Corp. v. Colt,* 475 P.2d 301, 304 (Wyo.1970); *Olan Mills, Inc. of Tennessee v. Cannon Aircraft Executive Terminal, Inc.,* 273 N.C. 519, 160 S.E.2d 735, 740, 744 (1968); *Wagaman v. Ryan,* 258 Iowa 1352, 142 N.W.2d 413, 418–19 (1966); *City of Enid v. Reeser,* 355 P.2d 407, 409 (Okl.1960); *Cover v. Platte Valley Public Irrigation District,* 167 Neb. 788, 95 N.W.2d 117, 119 (1959); *Bachman Chocolate Manufacturing Co. v. Lehigh Warehouse & Transportation Co., Inc.,* 1 N.J. 239, 62 A.2d 806, 808 (1949). *See generally,* Rundall, *supra* Note 61 at 754.