CATHOLIC BISHOP OF NORTHERN ALASKA, Petitioner,

v.

John DOES 1–6, Respondents.

No. S–11295.

Supreme Court of Alaska.

Aug. 18, 2006.

Robert B. Groseclose and Mila A. Neubert, Cook Schuhmann & Groseclose, Inc., Fair-

banks, for Petitioner Catholic Bishop of Northern Alaska.

James M. Gorski, Hughes Thorsness Powell Huddleston & Brundin, PC, Anchorage, for Petitioner Society of Jesus, Oregon Province.

Kenneth S. Roosa, Cooke, Roosa & Valcarce, LLC, Anchorage, and John S. Hedland, Hedland Brennan Heideman & Cooke, Anchorage, for Respondents.

Before: BRYNER, Chief Justice, MATTHEWS, EASTAUGH, FABE, and CARPENETI, Justices.

## OPINION

CARPENETI, Justice.

## I. INTRODUCTION

Six unnamed plaintiffs allege that they were subjected to childhood sexual abuse by a Catholic priest in the 1950s, 1960s, and 1970s. They filed suit against the priest's former employers in 2003. The defendants filed a motion to dismiss based on the statute of limitations. The superior court held the motion in abeyance pending further discovery. The defendants petitioned for review and we granted their petition in order to clarify the law that applies to this case.

We conclude that AS 09.10.065 does not revive civil claims that were time-barred before the effective date of the statute, October 1, 2001. We return the case to the superior court for further proceedings.

## II. FACTS AND PROCEEDINGS

In June 2003 the six plaintiffs, as John Does, filed suit against the Catholic Bishop of Northern Alaska (CBNA) and the Society of Jesus, Oregon Province (Jesuits) alleging that they suffered sexual abuse at the hands of a Jesuit priest, Father Jules Convert. CBNA has owned various Catholic Church facilities throughout northern and western Alaska, including those where the plaintiffs claim to have been abused, since its incorporation in 1952. The Society of Jesus is a

Catholic order that oversees priests throughout the world; its Oregon Province includes Alaska. The CBNA coordinated staffing decisions, including those involving Father Convert, with the Jesuits.

The plaintiffs allege that Father Convert sexually molested them at church facilities. The specific allegations vary, but generally involve Father Convert selecting plaintiffs as altar boys, inviting them to be alone with him, and then sexually fondling them. The plaintiffs also allege that defendants knew of Father Convert's abuse, that they actively concealed it by moving him from parish to parish, and that they knowingly failed to report it to parishioners or law enforcement. CBNA and the Jesuits admit that Father Convert worked throughout Alaska and the Yukon Delta from 1942 to 1978.

In the current version of their complaint,[1] the plaintiffs argue that the defendants are liable under various theories. First, they maintain that the defendants are vicariously liable for the actions of Father Convert under *respondeat superior* and agency theories. Second, they allege that the defendants are directly liable because they negligently hired and supervised Father Convert. Finally, they argue that the defendants entered into a fiduciary relationship with the plaintiffs by undertaking to care for them as minors and by "holding themselves out as shepherds and leaders of the Roman Catholic Church." Therefore, according to the plaintiffs, the defendants' failure to disclose Father Convert's alleged sexual misconduct amounted to fiduciary fraud and a breach of fiduciary duty. The plaintiffs also argue that the defendants' failure to inform the public of Father Convert's abuse tolls the statute of limitations and estops them from invoking it as a defense.

The CBNA moved to dismiss the complaint under Alaska Civil Rule 12(b)(6); the Jesuits later joined the motion. The CBNA argued that the plaintiffs' claims were barred by the two-year statute of limitations for tort actions;[2] although the statute of limitations

---

1. The plaintiffs amended their complaint four times to add additional plaintiffs and claims.

2. AS 09.10.070 provides in relevant part:
 (a) Except as otherwise provided by law, a person may not bring an action (1) for libel,

slander, assault, battery, seduction, or false imprisonment; (2) for personal injury or death, or injury to the rights of another not arising on contract and not specifically provided otherwise; (3) for taking, detaining, or in-

was tolled until the plaintiffs reached the age of majority,[3] the youngest plaintiff turned eighteen over twenty years before the suit was filed. The CBNA also discussed AS 09.10.065, which eliminates the statute of limitations for sexual abuse claims. First, CBNA noted that AS 09.10.065 was enacted after the plaintiffs' claims were already time-barred and asserted that the statute did not apply retroactively to revive claims which had lapsed before its enactment. Second, it argued that this provision was irrelevant to the plaintiffs' claims because it only applied to actual perpetrators of sexual abuse, and not to employers or other vicariously liable parties. In addition, the CBNA argued that the discovery rule, which tolls the statute of limitations until a person discovers or reasonably should have discovered the essential elements of his cause of action, was inapplicable to the plaintiffs because they knew facts that should have prompted them to start investigating their claims against the defendants within the statutory period. The CBNA also argued that the doctrine of laches bars the plaintiffs' actions, since they could have brought suit when key witnesses, including Father Convert, were still alive and before the loss or destruction of relevant records. In support of this argument, the CBNA submitted the affidavit of Richard Case, a Jesuit priest and Chancellor for the CBNA, which states that the priests and bishops who were Father Convert's contemporaries are deceased (excepting one Jesuit superior now in failing health in Washington) and that existing CBNA records do not mention any sexual abuse or misconduct.

In opposing the motion to dismiss, the plaintiffs first raised a procedural issue. Citing the lack of discovery and the fact that the CBNA's motion to dismiss included external materials—namely the Case affidavit—they argued that the court should dismiss the motion and then allow the defendants leave to refile it as a summary judgment motion after discovery, or that the court allow the plaintiffs to delay filing their opposition to the motion until a month after discovery was completed. In addition, before the superior court heard oral arguments on the motions, the plaintiffs submitted the affidavit of their own expert, Patrick Wall, a former Catholic priest and expert on canonical requirements for record keeping. This affidavit maintained that the CBNA's search of its records had not been sufficiently diligent and that there likely was relevant information in church archives.

The plaintiffs also responded to the CBNA's statute of limitations arguments, maintaining that: (1) AS 09.10.065 applied to any civil action based on a claim of sexual abuse, including those against employers through operation of *respondeat superior* and aided-in-agency principles; and (2) their claims were saved by the discovery rule. The plaintiffs essentially argued that they lacked information about the defendants' supervision of Father Convert and what church officials knew or should have known about his behavior, and therefore requested discovery so that they could determine whether there was sufficient evidence to allow their claims under an exception to the statute of limitations.

Superior Court Judge Dale O. Curda held a hearing on the motion to dismiss and issued an order holding the motion to dismiss in abeyance until completion of discovery. In the order Judge Curda stated that because both sides had submitted significant outside materials, namely the Case and Wall affidavits, he was required to convert the motion to dismiss into a motion for summary judgment according to Civil Rule 12(b) and our decision in *Martin v. Mears*.[4] Concluding that conversion of a motion to dismiss

juring personal property, including an action for its specific recovery; (4) upon a statute for a forfeiture or penalty to the state; or (5) upon a liability created by statute, other than a penalty or forfeiture; unless the action is commenced within two years of the accrual of the cause of action.

3. AS 09.10.040 tolls the statue of limitations while the plaintiff is either incompetent due to mental disability or is a minor.

4. 602 P.2d 421 (Alaska 1979). In *Martin* we held that Civil Rule 12(b) required the conversion of motions to dismiss to motions for summary judgment where affidavits or items beyond the pleadings are "presented to and not excluded by the court." *Id.* at 426.

into a motion for summary judgment entitles the parties to a reasonable opportunity to clarify the facts of the case, Judge Curda declined to rule on the motion until the parties completed discovery.

The CBNA and the Jesuits petitioned this court for review, arguing that the external affidavits were not relevant to their statute of limitations argument. They posited that since the statute of limitations issue involved pure questions of law which were not fact dependent it was amenable to immediate appellate review. We granted the petition for review.

## III. STANDARD OF REVIEW

 We review trial court decisions regarding motions to dismiss de novo,[5] deeming all facts in the complaint true and provable.[6] As complaints must be liberally construed, grant of a motion to dismiss is disfavored.[7] To survive a motion to dismiss, a complaint need only allege "a set of facts consistent with and appropriate to some cause of action."[8] A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts that would entitle him or her to relief.[9]

 We review questions of law, including the interpretation of statutes and regulations, according to our independent judgment.[10] "When construing the meaning of a statute under this standard, we look to the meaning of the language, the legislative history, and the purpose of the statute and adopt the rule of law that is most persuasive in light of precedent, reason, and policy."[11]

## IV. DISCUSSION

The CBNA[12] makes three general arguments. First, it maintains that AS 09.10.065, which eliminates the statute of limitations for sexual abuse claims, does not apply to the plaintiffs because the effective date of that statute is October 1, 2001, long after the statute of limitations had run in this case. The CBNA argues that neither AS 09.10.065 nor any of its predecessor statutes revived time-barred claims.[13] As detailed in Part IV.A.3, we agree.

Second, the CBNA argues that AS 09.10.065 does not apply to vicarious liability claims against non-perpetrators. It argues the legislature intended to lift the statute of limitations only for claims against actual abusers, and that accordingly, the plaintiffs cannot use this statute as a basis for their suit. Because we conclude that AS 09.10.065 does not apply retrospectively, we need not reach this issue.

Third, the CBNA maintains that the discovery rule does not apply to save the plaintiffs' claims. Because this argument involves factual issues the resolution of which requires further development in the superior court, we decline to reach this argument.

### A. Alaska Statute 09.10.065 Does Not Revive Time–Barred Civil Claims.

#### 1. The legislative history of AS 09.10.065

 Before 2001, AS 09.10.060(c)—the predecessor to AS 09.10.065—provided for a three-year statute of limitations for actions for damages against perpetrators of sexual abuse:

**5.** See *Nunez v. Am. Seafoods, Inc.*, 52 P.3d 720, 721(Alaska 2002) (grant or denial of motion to dismiss reviewed *de novo* ).

**6.** *Guerrero v. Alaska Hous. Fin. Corp.*, 6 P.3d 250, 253 (Alaska 2000).

**7.** *Id.*

**8.** *Id.* at 253–54 (internal quotations omitted).

**9.** *Id.* at 254.

**10.** *Therchik v. Grant Aviation*, 74 P.3d 191, 193 (Alaska 2003).

**11.** *Marshall v. First Nat'l Bank of Alaska*, 97 P.3d 830, 834 (Alaska 2004) (internal citations and quotations omitted).

**12.** The Jesuits settled with the plaintiffs after submitting an opening brief in this appeal. In its reply brief, the CBNA adopted at least some of the arguments made by the Jesuits. Thus, for the purposes of this appeal we impute to the CBNA arguments made by the Jesuits in their opening brief.

**13.** As explained below, AS 09.10.065, former AS 09.10.060(c), was amended in 2001 and 2003.

A person who was the victim of sexual abuse may not maintain an action for recovery of damages against the perpetrator of the act or acts of sexual abuse based on the perpetrator's intentional conduct for an injury or condition suffered as a result of the sexual abuse unless an action is commenced within three years. In this subsection, "sexual abuse" means an act committed by the defendant against the plaintiff maintaining a cause of action if the defendant's conduct would have violated a provision of AS 11.41.410–11.41.440 or 11.41.450–11.41.458 at the time it was committed.[14]

In 2001 the legislature repealed and reenacted AS 09.10.060(c).[15] For ease of reference, we refer to the repeal and reenactment as an amendment. The amendment eliminated the three-year statute of limitations and allowed a plaintiff to bring an action for sexual abuse "at any time":

(c) Notwithstanding other provisions in this chapter, a person may bring an action at any time for the following acts:

(1) felony sexual abuse of a minor;

(2) felony sexual assault. . . .

This amendment took effect on October 1, 2001.[16]

When it was introduced as House Bill (H.B.) 210, the 2001 amendment initially dealt only with statutes of limitations applicable to criminal prosecutions. Representative Meyer, the bill sponsor, explained that the bill was motivated by developments in forensic technology, including DNA testing, which made it possible to prove beyond a reasonable doubt that a sexual assault had occurred even twenty years after the crime.[17] The first mention of lifting the statute of limitations for civil claims of sexual abuse came from Representative Berkowitz, who observed that while H.B. 210 would allow the state an unlimited window of opportunity to prosecute sex offenders, victims of such crimes would remain bound by existing statutes of limitation.[18] At his suggestion, the house adopted language lifting the civil statute of limitations, but at no point did the house consider whether the language revived time-barred civil claims or had any retroactive effect.[19] Moreover, when Representative Meyer presented the bill to the Senate Judiciary Committee, he again focused on the criminal provisions, and the senate did not engage in any significant discussion about the effect of the amendment lifting the civil statute of limitations for sexual abuse.[20]

In 2003 the legislature again amended this provision. The amendment differentiated between felony and misdemeanor sexual abuse, adding a three-year statute of limitations for misdemeanor abuse, and recodified AS 09.10.060(c) as a separate provision, AS 09.10.065. This statute provides that:

(a) A person may bring an action at any time for conduct that would have, at the time the conduct occurred, violated provisions of any of the following offenses:

(1) felony sexual abuse of a minor;

(2) felony sexual assault; or

(3) unlawful exploitation of a minor.

(b) Unless the action is commenced within three years of the accrual of the claim for relief, a person may not bring an action for conduct that would have, at the time the conduct occurred, violated the provisions of any of the following offenses:

(1) misdemeanor sexual abuse of a minor;

(2) misdemeanor sexual assault;

(3) incest; or

(4) felony indecent exposure.

Although this amendment was enacted on June 6, 2003, it was made retroactive to October 1, 2001 "to the extent permitted by the state and federal constitutions."[21]

14. Former AS 09.10.060(c). This provision was enacted in 1990. Ch. 4, § 1, SLA 1990.

15. Ch. 86, § 1, SLA 2001. This chapter also repealed and reenacted AS 12.10.010, covering time limitations on criminal prosecutions for offenses including felony sexual abuse of a minor.

16. Ch. 86, § 1, SLA 2001.

17. 4/9/01 House Judiciary Comm. Minutes.

18. *Id.*

19. *See id.*

20. 5/2/01 Senate Judiciary Comm. Minutes.

21. Ch. 40, § 4, SLA 2003.

### 2. The presumption against retrospective legislation

■ Alaska Statute 01.10.090 provides that "[n]o statute is retrospective unless expressly declared therein." This statute creates a presumption against retrospective legislation,[22] and we have noted that "[s]tatutes are not to be applied retroactively unless the language used by the legislature indicates the contrary."[23] The CBNA maintains that this principle prevents retroactive application of AS 09.10.065. It asserts that the legislature intended for the 2001 amendment to take effect on October 1, 2001, and that the plaintiffs' claims are time-barred because they lapsed well before that date.

The plaintiffs respond that the broad language of the 2001 and 2003 amendments demonstrates that the legislature intended to revive lapsed claims. First, they argue that language introduced in the 2001 amendment (which continues through to the current AS 09.10.065) suggests that the legislature intended for this provision to revive lapsed claims. Specifically, they note that while the former provision referred to "perpetrators" and set a three-year statute of limitations, the new language allows individuals to "bring an action at any time for the following acts," and then lists various criminal offenses. They maintain that this distinction reflects a legislative choice to significantly broaden the reach of this statute to revive lapsed claims.

In addition, the plaintiffs argue that it is significant that the 2001 amendment explicitly indicated that it did not revive certain time-barred *criminal* claims:

Sec. 4. The uncodified law of the State of Alaska is amended by adding a new section to read:

APPLICABILITY. The extension of the statute of limitations for felony sexual assault provided in sec. 2 of this Act [which waives the statute of limitations for specified criminal actions] applies

(1) to all offenses occurring on or after the effective date of this Act; and

(2) to all offenses occurring before the effective date of this Act if the statute of limitations applicable to that offense on the day before the effective date of this Act has not expired, including any specific time periods for that offense under AS 12.10.020, as that section read the day before the effective date of this Act, and any period when the limitations period did not run under AS 12.10.040.[24]

The plaintiffs argue that the lack of comparable language regarding the lifting of the statute of limitations for civil claims suggests that the legislature intended for AS 09.10.065 to apply retroactively.

### 3. Alaska Statute 09.10.065 does not revive time-barred civil claims.

The legislature inserted section four—that is, it did not attempt to revive time-barred criminal claims—because the prosecution of a lapsed criminal claim would constitute an *ex post facto* law. The Senate Judiciary Committee heard from the bill's drafter, Gerald Luckhaupt, who testified that reviving time-barred criminal provisions would violate the constitutional prohibition against *ex post facto* laws.[25] While the legislature clearly dis-

**22.** *Eastwind, Inc. v. State,* 951 P.2d 844, 846 (Alaska 1997).

**23.** *Matanuska Maid, Inc. v. State,* 620 P.2d 182, 187 n. 8 (Alaska 1980) (citing *City & Borough of Juneau v. Commercial Union Ins. Co.,* 598 P.2d 957, 958–59 (Alaska 1979); *Davenport v. McGinnis,* 522 P.2d 1140, 1142 (Alaska 1974); *Stephens v. Rogers Constr. Co.,* 411 P.2d 205, 208 (Alaska 1966)). *See also Hood v. State, Workmen's Comp. Bd.,* 574 P.2d 811, 813–814 (Alaska 1978) ("[S]tatutes are presumed to operate prospectively and will not be given a retroactive effect, unless by express terms or necessary implication, it clearly appears that that was the legislative intent.").

**24.** Ch. 86, § 4, SLA 2001.

**25.** 5/2/01 Senate Judiciary Comm. Minutes. Mr. Luckhaupt appears to have advised the legislature correctly. *See Stogner v. California,* 539 U.S. 607, 123 S.Ct. 2446, 156 L.Ed.2d 544 (2003). Although *Stogner* was not decided until after the 2001 amendments, it validated Mr. Luckhaupt's testimony; the Court held that the *ex post facto* clause of the United States Constitution forbids resurrection of a time-barred prosecution and observed that "numerous legislators, courts, and commentators have long believed it well settled that the Ex Post Facto Clause forbids resurrection of a time-barred prosecution." *Id.* at 616, 123 S.Ct. 2446. *Cf. State v. Creekpaum,* 753 P.2d 1139 (Alaska 1988) (extension of statute of limitations for crime whose original period of limitation had not yet expired was not unconstitutional *ex post facto* law).

played its intention that the criminal sections of the 2001 amendments not be given retroactive effect, it does not follow that the legislature assumed that the civil sections of the statute would have such effect. The legislature never discussed whether the amendment would revive lapsed civil claims; retroactivity was raised only in regard to criminal prosecutions. When the legislature amended AS 09.10.065 in 2003, it specifically limited retroactive effect on time-barred civil claims to October 1, 2001, which was the effective date of the 2001 amendment.[26] Had the legislature intended to revive time-barred civil claims, it would have explicitly stated so. Indeed, the legislature knows how to indicate when a statute is to be fully retrospective and has shown its ability to do so. For example, AS 09.55.650, enacted at the same time as AS 09.10.060(c) (the predecessor of AS 09.10.065), was promulgated with a section specifically noting its applicability to "all actions commenced on or after February 2, 1990 *regardless of when the cause of action may have arisen.*"[27] This provision clearly shows legislative intent to apply AS 09.55.560 retrospectively. Had the legislature intended AS 09.10.065 to apply retrospectively, it would have used similar language. That the legislature chose not to add such language, when considered along with the legislative history and the statutory presumption against retroactive statutes, leads us to conclude that AS 09.10.065 does not act retrospectively to revive time-barred claims. Thus, we conclude that the plaintiffs cannot rely on this statute as a basis for their claims.

This conclusion makes it unnecessary for us to consider the CBNA's argument that retroactive application of this statute would violate any rights of repose that vested once the original statute of limitations had expired or the plaintiffs' argument that AS 09.10.065

applies to claims against vicariously liable non-perpetrators.

## B. Application of the Discovery Rule Is a Question of Fact.

In its present posture, this case is on review from the superior court's refusal to grant a motion to dismiss. A motion to dismiss should not be granted if "evidence may be introduced that will sustain a grant of relief to the plaintiff."[28] Under the discovery rule, the date on which the statute of limitations begins to run is a question of fact.[29] We cannot rule out the possibility that evidence may be introduced that will show that the statute of limitations has not run. Therefore this case must be remanded for further proceedings. We observe that once sufficient discovery is conducted, the statute of limitations affirmative defense should be resolved in advance of trial. If a genuine issue of material fact is presented it should be resolved in advance of trial by the superior court as "a preliminary question of fact" following an appropriate evidentiary hearing.[30]

## V. CONCLUSION

For the reasons noted above, we AFFIRM the decision of the superior court to hold the CBNA's motion to dismiss in abeyance pending further discovery. On remand, the superior court should conduct further proceedings in accordance with this opinion.

**26.** Ch. 40, § 4, SLA 2003.

**27.** Ch. 4, § 11, SLA 1990. (Emphasis added.) *See also* ch. 70, § 3, SLA 1996 ("This Act applies to civil actions commenced on or after the effective date of this Act regardless of when the cause of action may have arisen."). Section 2 of chapter 70 deleted a subsection of the former AS 09.10.060 which had provided a three-year statute of limitations for malicious prosecution actions.

**28.** *Odom v. Fairbanks Mem'l Hosp.,* 999 P.2d 123, 128 (Alaska 2000).

**29.** *John's Heating Serv. v. Lamb,* 46 P.3d 1024, 1031 (Alaska 2002).

**30.** *Id.* at 1033 & n. 28.