*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| LISA REASNER, | ) | |
| | ) | Supreme Court Nos. S-15900/15929 |
| Appellant/Cross-Appellee, | ) | |
| | ) | Superior Court No. 4FA-12-02812 CI |
| v. | ) | |
| | ) | O P I N I O N |
| STATE OF ALASKA, DEPARTMENT | ) | |
| OF HEALTH & SOCIAL SERVICES, | ) | No. 7171 – May 19, 2017 |
| OFFICE OF CHILDREN'S SERVICES, | ) | |
| | ) | |
| Appellee/Cross-Appellant, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| ROLIN N. ALLISON JR. | ) | |
| | ) | |
| Appellee. | ) | |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Fourth Judicial District, Fairbanks, Bethany Harbison, Judge.

Appearances: Susan Orlansky, Reeves Amodio, LLC, Anchorage, and Michael C. Kramer and Reilly Cosgrove, Kramer and Associates, Fairbanks, for Appellant/Cross-Appellee. Ruth Botstein, Assistant Attorney General, Anchorage, and Craig W. Richards, Attorney General, Juneau, for Appellee/Cross-Appellant State of Alaska, Department of Health & Social Services, Office of Children's Services. No appearance by Appellee Rolin N. Allison, Jr.

Before: Stowers, Chief Justice, Winfree, Maassen, Bolger, and Carney, Justices.

BOLGER, Justice.

## I. INTRODUCTION

Lisa Reasner suffered years of sexual abuse while in foster care and after the Office of Children's Services (OCS)[1] approved her adoption. Years later Reasner sued OCS after discovering that OCS might have played a role in allowing her abuse. The superior court concluded that Reasner's claims were untimely and granted summary judgment in favor of OCS. The superior court also concluded that even if Reasner's claims had been timely, OCS would still be entitled to partial summary judgment on various other grounds, including that OCS was partially protected by discretionary function immunity and that Reasner failed to establish that her foster parents had not completed the proper training. For the reasons explained below, we vacate the superior court's grant of summary judgment and remand for further proceedings.

## II. FACTS AND PROCEEDINGS[2]

Reasner was born in 1989. OCS assumed custody of her in 1993 after ongoing reports of child neglect. In January 1994 OCS placed Reasner in a foster care home with Rolin Allison Sr. and Myna Allison.

In July 1998 OCS received a report alleging that one of the Allisons' sons had sexually molested a neighbor's granddaughter. During the ensuing investigation Reasner revealed that Rolin Allison Jr. (J.R.), a different son, had sexually abused her "a long time ago." At the time of the investigation, however, J.R. was not living with the Allisons, and Reasner was allowed to remain in the Allison home. The Allisons adopted

---

[1]    OCS was known at the time as the Division of Family and Youth Services.

[2]    Because this case was decided on summary judgment, we present the facts in the light most favorable to Reasner's claims. *See Hagen v. Strobel*, 353 P.3d 799, 802-03 (Alaska 2015).

Reasner in April 1999. OCS received reports that J.R. was abusing Reasner after the adoption but OCS did not take steps to remove Reasner from the home.

In November 2011 J.R. was arrested for sexually abusing Reasner and other children. (J.R. eventually pleaded guilty to five counts of felony sexual abuse of a minor.) Reasner attended his arraignment and spoke with her former OCS caseworker. The caseworker told Reasner that OCS had known that J.R. was dangerous and had ordered Myna Allison to keep him away from the home. According to Reasner this was the first time she learned that OCS may have failed to protect her from J.R.

Reasner sued OCS on December 3, 2012. Relevant to this appeal, Reasner alleged that (1) OCS had negligently investigated reports of harm occurring while OCS had legal custody of Reasner; (2) OCS had negligently supervised/monitored the Allison home; and (3) OCS had negligently failed to investigate reports of harm after Reasner was adopted.

The superior court granted OCS summary judgment on all of Reasner's claims,[3] concluding that they were untimely under Alaska's two-year statute of limitations for tort suits.[4] The superior court also determined that even if Reasner's claims had been timely, OCS would still be entitled to partial summary judgment on Reasner's claims because she failed to establish a genuine issue of material fact as to whether the Allisons had completed certain training requirements and because OCS was partially protected by discretionary function immunity. The superior court, however,

---

[3] The court's order addressed both OCS's motion to dismiss and its motion for summary judgment. But because the order relied on evidence outside the pleadings, we simply treat it as a grant of summary judgment. *See* Alaska R. Civ. P. 12(c) (providing that a motion for judgment on the pleadings shall be treated as one for summary judgment if "matters outside the pleadings are presented to and not excluded by the court").

[4] AS 09.10.070.

rejected OCS's argument that Alaska's statute of repose also barred Reasner's claim concluding that the statute was unconstitutional as applied to Reasner, and the superior court also rejected OCS's argument that Reasner had failed to establish a causal link between OCS's alleged negligence and her harm.

Reasner appeals and OCS cross-appeals.

## III. DISCUSSION

The parties appeal a grant of summary judgment. When ruling on a summary judgment motion, a court must construe all reasonable factual inferences in favor of the non-moving party.[5] "[S]ummary judgment is appropriate only when no reasonable person could discern a genuine factual dispute on a material issue."[6] As we have consistently explained, "ours is a 'lenient standard for withstanding summary judgment.' "[7] Any admissible evidence in favor of the nonmoving party concerning a material fact is sufficient . . . ."[8] We review questions of summary judgment de novo.[9]

We divide our discussion into two categories: (1) whether the superior court erred in granting OCS summary judgment because Reasner's claims were untimely and (2) whether Reasner's claims otherwise withstand summary judgment.

---

[5] *Christensen v. Alaska Sales & Serv., Inc.*, 335 P.3d 514, 520 (Alaska 2014).

[6] *Id.*

[7] *Id.* (quoting *Shaffer v. Bellows*, 260 P.3d 1064, 1069 (Alaska 2011)).

[8] *Greywolf v. Carroll*, 151 P.3d 1234, 1241 (Alaska 2007).

[9] *Cikan v. ARCO Alaska, Inc.*, 125 P.3d 335, 338-39 (Alaska 2005).

### A. Whether Reasner's Claims Were Untimely

**1. It was error to grant summary judgment to OCS under AS 09.10.070 because a genuine issue of material fact exists as to when Reasner's claims accrued.**

Alaska Statute 09.10.070 requires that tort claims be brought "within two years of [their] accrual."[10] A different statute, AS 09.10.140(a), tolls the limitations period for minors until they reach the age of 18. The superior court found that all of Reasner's claims were untimely because she filed suit more than two years after her eighteenth birthday. Reasner argues that this was error because a genuine issue of material fact exists concerning when her claims "accru[ed]" as that term is used in AS 09.10.070 and that, at the very least, an evidentiary hearing was required to resolve this dispute. We agree with Reasner.

In Alaska the statute of limitations begins to run on the date "when a reasonable person has enough information to alert that person that he or she has a potential cause of action or should begin an inquiry to protect his or her rights."[11] The test for inquiry notice focuses on when a plaintiff has sufficient information *to prompt an inquiry*, not on when she has specific information establishing each element of her cause of action.[12] Determining that date requires a "fact-intensive" analysis.[13] We have therefore cautioned that summary judgment should only be used to resolve the time at

---

[10] AS 09.10.070(a).

[11] *Mine Safety Appliances Co. v. Stiles*, 756 P.2d 288, 291 (Alaska 1988). This is referred to as the "discovery rule." *See Cameron v. State*, 822 P.2d 1362, 1365-66 (Alaska 1991) (explaining Alaska's formulation of the discovery rule).

[12] *See Cameron*, 822 P.2d at 1366.

[13] *Ranes & Shine, LLC v. MacDonald Miller Alaska, Inc.*, 355 P.3d 503, 509 (Alaska 2015).

which a statute of limitations commences when "there exist uncontroverted facts that determine when a reasonable person should have" begun an inquiry to protect her rights.[14]

In order to succeed in her suit against OCS, Reasner must prove that OCS acted negligently.[15] Reasner argues that a reasonable person in her circumstances would not have begun an inquiry until she discovered that OCS may have played some role in allowing her to be abused.[16] The superior court appeared to accept this reasoning, but found that by the time Reasner turned 18, she did, in fact, have information suggesting that OCS may have played a role in allowing her to be abused. Specifically, the superior court found that when Reasner turned 18 she essentially knew what her social worker later told her — "that OCS knew that J.R. was dangerous and had told Myna Allison that he was forbidden to be around the home." In reaching this conclusion the superior court

---

[14]     *Palmer v. Borg-Warner Corp.*, 818 P.2d 632, 634 (Alaska 1990).

[15]     Generally, Reasner must show that (1) OCS owed her a duty of care, (2) OCS breached that duty, (3) she was injured, and (4) her injury was the factual and proximate result of OCS's breach. *See Regner v. N. Star Volunteer Fire Dep't, Inc.*, 323 P.3d 16, 21 (Alaska 2014); *Kelly v. Municipality of Anchorage*, 270 P.3d 801, 803 (Alaska 2012).

[16]     *See Pedersen v. Zielski*, 822 P.2d 903, 907 (Alaska 1991) (noting that while the need for the discovery rule is most apparent "where the plaintiff's injury is undiscovered and reasonably undiscoverable," Alaska's formulation of the discovery rule "is broad enough to cover other undiscovered and reasonably undiscoverable elements such as whether the cause of the injury was tortious"). *See also Sopko v. Dowell Schlumberger, Inc.*, 21 P.3d 1265, 1270 (Alaska 2001) (citing *Pedersen* and stating that discovery rule in tort suits "protects plaintiffs whose injury is known but the cause is not reasonably discoverable during the limitations period"). *Cf. Mine Safety Appliances Co.*, 756 P.2d at 291-92, (affirming summary judgment decision that under the discovery rule the statute of limitations for a product defect in a worker's helmet began to run from the date of the accident involving head injuries and damage to the helmet, rather than date the plaintiff actually discovered the helmet was defective).

relied on two events: (1) that Reasner reported her abuse to OCS but OCS allowed her to remain in the Allison home and (2) that Reasner told a counselor in 2007 that she had reviewed her OCS and adoption records.

Summary judgment, however, "is appropriate only when no reasonable person could discern a genuine factual dispute on a material issue."[17] We conclude that a genuine factual dispute exists concerning when Reasner discovered information suggesting that OCS had played a role in allowing her to be abused. First, we note that when ruling on a summary judgment motion, a court must construe all reasonable factual inferences in favor of the non-moving party.[18] Applying that standard, the events relied upon by the superior court do not justify the superior court's ultimate conclusion that Reasner had information suggesting OCS's role in her abuse as early as 2007. The fact that Reasner reported her abuse to OCS while in OCS custody only establishes that Reasner knew a report about J.R. had been made to OCS. It does not establish, at least for the sake of summary judgment, that Reasner knew that OCS previously had known J.R. was dangerous or that Reasner knew that OCS previously had told Myna that J.R. was not allowed to be around the home. The 2007 counselor's report is similarly unhelpful. It stated only that "[a]t the age of 18 she looked up her OCS records and adoption records. She feels like her adoptive parents lied to her for 14 years." The counselor's report did not contain any details as to what documents Reasner actually reviewed or whether she understood their contents. In a second affidavit accompanying her motion to reconsider, Reasner stated that she had only reviewed some adoption

---

[17] *Christensen v. Alaska Sales & Serv., Inc.*, 335 P.3d 514, 520 (Alaska 2014).

[18] *Id.*

records in her mother's closet, not her OCS records. Indeed, as Reasner points out on appeal, OCS was not permitted to disclose her records under 7 Alaska Administrative Code (AAC) 54.050(1).

More importantly, the conclusion reached by the superior court was directly contradicted by Reasner's own sworn affidavit. In that affidavit Reasner asserted "the first time that [she] had information that OCS was negligent in failing to protect [her] from [J.R.]" was on November 9, 2011, because that was the date her former OCS caseworker told her that "OCS knew that [J.R.] was dangerous, and [that OCS] had told Myna Allison that he was forbidden to be around the home or any of the foster children." As we have stated, "[a]ny admissible evidence in favor of the nonmoving party concerning a material fact is sufficient" to withstand summary judgment.[19] Reasner's sworn affidavit constitutes admissible evidence and is relevant to determining when Reasner discovered sufficient information "to alert a reasonable person to begin an inquiry to protect [her] rights."[20] Rather than resolving this issue at the summary judgment stage, the superior court should have held an evidentiary hearing to resolve the preliminary question of fact concerning when the statute of limitations on Reasner's claims began to run.[21]

OCS also asks us to affirm the superior court's ruling on a different basis: that "Reasner's knowledge that she suffered sexual molestation while in OCS custody

---

[19]     *Greywolf v. Carroll*, 151 P.3d 1234, 1241 (Alaska 2007).

[20]     *Cameron v. State*, 822 P.2d 1362, 1366 (Alaska 1991).

[21]     *Catholic Bishop of N. Alaska v. Does 1-6*, 141 P.3d 719, 725 (Alaska 2006).

triggered the duty to investigate OCS."[22]  In other words, OCS asks us to hold that, as a matter of law, a child who suffers sexual abuse while in OCS custody is aware or should be aware that OCS may have played a role in allowing the child to be abused.

We implicitly rejected a similar argument in *Catholic Bishop of Northern Alaska v. Does 1-6*.[23]  In that case the plaintiffs sued two institutional defendants, the Catholic Bishop of Northern Alaska and the Society of Jesus, Oregon Province, alleging sexual abuse by a priest many decades earlier.[24]  We allowed their case to proceed past the motion to dismiss stage, noting that "[u]nder the discovery rule, the date on which the statute of limitations begins to run is a question of fact" and that we could not "rule out the possibility that evidence may be introduced that will show that the statute of limitations has not run."[25]  We therefore implicitly concluded that a child who has been sexually abused does not, as a matter of law, have sufficient information to prompt a reasonable person to inquire into potential claims against institutional defendants.[26]

---

[22]    We may affirm the superior court's grant of summary judgment "on any basis supported by the record, even if that basis was not considered by the court below or advanced by any party."  *Powercorp Alaska, LLC v. Alaska Energy Authority*, 290 P.3d 1173, 1181 (Alaska 2012) (quoting *Smith v. Stafford*, 189 P.3d 1065, 1070 (Alaska 2008)).

[23]    141 P.3d 719.

[24]    *Id.* at 720.

[25]    *Id.* at 725.

[26]    We have found in some cases that plaintiffs are on inquiry notice from the date of injury, even when they lack knowledge of specific facts indicating that a particular defendant had played a role in causing that injury.  *See, e.g.*, *Palmer v. Borg-Warner Corp.*, 818 P.2d 632, 635 (Alaska 1990) (holding that the estate of passenger killed in an airplane crash was on inquiry notice of potential claims against an airplane engine component manufacturer when the estate discovered that the crash had occurred);

(continued...)

Applying that conclusion here, we decline to affirm the superior court on OCS's proposed alternative basis, and we therefore reverse the superior court's grant of summary judgment.[27]

### 2.    Alaska Statute 09.10.065(a) does not apply to Reasner's claims.

Reasner argues that even if her claims are untimely under AS 09.10.070, they are timely as a matter of law under a different statute, AS 09.10.065(a). We disagree.

Alaska Statute 09.10.065(a) allows a person to bring a suit "at any time *for conduct* that would have, at the time the conduct occurred, violated provisions of any of"

---

[26]    (...continued)
*Mine Safety Appliances Co. v. Stiles*, 756 P.2d 288, 292 (Alaska 1988) (holding that plaintiff who suffered a head injury while wearing a protective helmet designed to prevent such injuries was on inquiry notice of potential product defect claims from the date of injury); As we indicated in those cases, however, the nature of the injury and identity of the potentially negligent parties is critical to this analysis. In *Palmer*, for example, we concluded that notice of an airplane crash put the plaintiff on notice of potential negligence claims against an airplane engine component manufacturer *because* "[t]he general safety record of air travel and the present state of air technology compel[led] us to conclude that air crashes do not normally occur absent negligence" by "the pilot, the carriers, or the manufacturers." *Palmer*, 818 P.3d at 634 (quoting *Widmyer v. Se. Skyways, Inc.,* 584 P.2d 1, 14 (Alaska 1978)). That same reasoning does not apply here: the obvious cause of child sexual abuse is the intentional action of the abuser, and there is no evidence at this juncture suggesting that such abuse does not normally occur in foster homes absent negligence by the supervisory agency.

[27]    Reasner also asserts other grounds for tolling the two-year statute of limitations in her case, including mental incompetency under AS 09.10.140(a) and that she did not connect her sexual abuse to her psychological injuries until she resumed counseling in 2011. OCS argues that these arguments were waived because Reasner failed to raise them in a timely fashion. But even if Reasner waived those alternative tolling grounds for the sake of the present appeal, she is still free to raise them on remand, and thus we do not need to reach those arguments.

five listed felony offenses, including felony sexual abuse of a minor.[28] The question we must resolve is whether Reasner's suit against OCS is "for conduct" that amounted to felony sexual abuse of a minor.

We review a superior court's interpretation of a statute de novo.[29] We interpret the statute "according to reason, practicality, and common sense, considering the meaning of the statute's language, its legislative history, and its purpose."[30] We apply "a sliding scale approach, where '[t]he plainer the statutory language is, the more convincing the evidence of contrary legislative purpose or intent must be.' "[31]

We conclude that Reasner's suit against OCS is not subject to the extended limitations period provided in AS 09.10.065(a). First, Reasner's suit falls outside the plain language of AS 09.10.065(a). Reasner argues that her suit against OCS is "for conduct" that amounted to "felony sexual abuse of a minor" and that she is therefore permitted under AS 09.10.065(a) to bring that suit "at any time." But Reasner, of course, is not alleging that OCS committed felony sexual abuse of a minor; rather, she argues that J.R. committed the underlying crime and that OCS was negligent in failing to protect her from his conduct. Reasner's suit *against OCS* can thus only be characterized as "for" the negligent conduct of OCS — conduct which Reasner admits did not constitute felony

---

[28]     AS 09.10.065(a) (emphasis added).

[29]     *Girdwood Mining Co. v. Comsult LLC*, 329 P.3d 194, 197 (Alaska 2014).

[30]     *Parson v. State, Dep't. of Revenue, Alaska Hous. Fin. Corp.*, 189 P.3d 1032, 1036 (Alaska 2008).

[31]     *State, Commercial Fisheries Entry Comm'n v. Carlson*, 270 P.3d 755, 762 (Alaska 2012) (alteration in original) (quoting *Gov't Emps. Ins. Co. v. Graham-Gonzalez*, 107 P.3d 279, 284 (Alaska 2005)).

sexual abuse of a minor.[32] Therefore Reasner's negligence suit against OCS is not "for conduct" constituting felony sexual abuse of a minor, and we conclude that her suit falls outside the plain language of AS 09.10.065(a).

Because Reasner asks us to interpret AS 09.10.065(a) in a manner inconsistent with the plain language of the statute, we will adopt her proposed construction only if we can find convincing evidence of contrary legislative purpose or intent to include suits like Reasner's — i.e., negligence suits against non-perpetrators — within the scope of AS 09.10.065(a). Reasner points to a change in the statutory language from "against the perpetrator" to "for conduct . . . violat[ing]" as indicating an intent to include negligence suits against non-perpetrators within the scope of AS 09.10.065(a).[33] According to Reasner this change indicates a legislative intent to permit "suits against third parties who are legally responsible for allowing [sexual] abuse to occur." But as we have stated before, "the absence of greater discussion is a meaningful indication that the [legislature] was *not* charting a radical course,"[34] and nothing in the legislative history suggests that by making this change the legislature intended to broaden the application of the statute to include negligence suits.[35] Reasner also points to legislative committee minutes expressing a general policy of expanding

---

[32]    *See* AS 11.41.434, .436, and .438. In *Catholic Bishop* we left undecided the similar question whether AS 09.10.065(a) applies to vicarious liability claims against non-perpetrators. *Catholic Bishop of N. Alaska v. Does 1-6*, 141 P.3d 719, 722 (Alaska 2006). That issue is not raised by this case because Reasner is suing OCS for its own negligent conduct, not under a theory of vicarious liability.

[33]    *See* former AS 09.10.060(c) (2000).

[34]    *Glover v. State, Dep't of Transp., Alaska Marine Highway Sys.*, 175 P.3d 1240, 1248-49 (Alaska 2008) (emphasis in original).

[35]    *See* Ch. 86, § 1, SLA 2001; Ch. 40, § 1, SLA 2003; *see also Catholic Bishop*, 141 P.3d at 722-23 (discussing the legislative history of AS 09.10.065).

victims' access to courts.[36] But such general statements do not indicate an intent to cover claims that are not "for conduct . . . violat[ing]" any of the listed felony offenses.

Finally, we find that our approach is consistent with the approach taken by courts in other jurisdictions interpreting similar statutes.[37] We therefore conclude that AS 09.10.065(a) does not apply to Reasner's action against OCS.

### 3. The superior court should first determine whether AS 09.10.055 applies to Reasner's claims before reaching her as-applied constitutional challenge.

OCS argued below that even if Reasner's claims were timely under the discovery rule or under AS 09.10.065(a), Alaska's statute of repose would still bar them. Alaska's statute of repose extinguishes all personal injury actions (subject to certain exceptions) unless commenced within ten years of "the last act alleged to have caused the personal injury."[38] The superior court rejected OCS's argument, concluding that the statute of repose was unconstitutional as applied to "facts in which the child's legal custodians are the alleged tortfeasors" because it would deny minors access to courts and

---

[36] *See* Minutes, H. Jud. Comm. Hearing on H.B. 210, 22nd Leg., 1st Sess. (Apr. 9, 2001) (comments by Representative Ethan Berkowitz and the Executive Director of the Council on Domestic Violence and Sexual Assault).

[37] *See, e.g.*, *Sandoval v. Archdiocese of Denver*, 8 P.3d 598, 602 (Colo. App. 2000) (holding that an analogous Colorado statute does not encompass actions for negligent hiring or supervision by an employer); *Kelly v. Marcantonio*, 678 A.2d 873, 875-76 (R.I. 1996) (holding that an analogous Rhode Island statute only applies to actions against the perpetrator).

[38] AS 09.10.055(a)(2).

therefore violate due process.[39]   But the superior court never made an initial determination that the statute of repose actually would bar Reasner's claims.

For a statute to be unconstitutional as applied to a particular set of facts, the statute must *actually apply* to those facts.  The United States Supreme Court has called it "an uncontroversial principle of constitutional adjudication . . . that a plaintiff generally cannot prevail on an *as-applied* challenge without showing that the law has in fact been (or is sufficiently likely to be) unconstitutionally *applied* to [her]."[40]

Here, however, it is possible that the statute of repose does not bar Reasner's claims or only bars some of them.  First, the statute of repose requires claims to be filed within ten years of "the last act alleged to have caused the personal injury, death, or property damage."[41]   Reasner brought her claim on December 3, 2012, and alleges that OCS received reports that she was being sexually abused in 2004 and 2006 — less than ten years before she sued — and negligently failed to protect her.  Second, the effective date of AS 09.10.055 is August 7, 1997.[42]   Reasner argues that even if OCS did not commit any negligent acts after December 2002, she would still be able to

---

[39]    We note that this conclusion goes beyond our previous holdings. *See Sands ex rel. Sands v. Green*, 156 P.3d 1130, 1133-36 (Alaska 2007) (striking down a statutory provision excluding children under the age of eight from the broad tolling provisions granted to other minors, but not addressing the constitutionality of the statute of repose)*; Evans ex rel. Kutch v. State*, 56 P.3d 1046, 1067-68 (Alaska 2002) (plurality opinion) (holding Alaska's statute of repose facially constitutional in response to equal protection and due process challenges).

[40]    *McCullen v. Coakley*, 134 S. Ct. 2518, 2534 n.4 (2014) (emphasis in original); *cf. Kyle S. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 309 P.3d 1262, 1268 (Alaska 2013) ("An as-applied challenge requires evaluation of the facts of the particular case in which the challenge arises.").

[41]    AS 09.10.055(a)(2).

[42]    Ch. 26, § 55, SLA 1997.

proceed with her claims based on multiple acts prior to AS 09.10.055's effective date. Finally, AS 09.10.055(b)(1) provides that the statute of repose does not apply when the damages resulted from, among other things, gross negligence, misrepresentation, or breach of fiduciary duty. Reasner argues that those three exceptions are applicable to her case.

Because the superior court decided that the statute of repose was unconstitutional as applied to Reasner's claims without first deciding whether the statute actually applied to those claims, we reverse that portion of the superior court's order. On remand, the superior court should determine whether the statute of repose applies to Reasner's case before it considers Reasner's as-applied constitutional challenge.

**B.     Whether Reasner's Claims Survive Summary Judgment On The Merits**

**1.     Discretionary function immunity**

The Alaska Tort Claims Act authorizes tort claims against the State,[43] but the State is immune from claims "based upon the exercise or performance or the failure to exercise or perform a *discretionary function or duty* on the part of a state agency or an employee of the state, whether or not the discretion involved is abused."[44]  As we have previously stated, "[t]wo varieties of agency action are not covered by discretionary

---

[43]     AS 09.50.250.

[44]     AS 09.50.250(1) (emphasis added).

function immunity: those involving no discretion and those involving 'only discretion free from policy considerations.' "[45]  "Whether a governmental act is entitled to discretionary function immunity is . . . a matter of law that is reviewed de novo."[46]

### a. OCS is not generally immune from suit for negligent investigation.

One of Reasner's claims is that OCS negligently investigated the reports that she was being sexually abused. OCS argues that it is immune from suit for negligent investigation because social worker investigations involve the use of discretion and are therefore protected by discretionary function immunity. But as we have previously explained, " 'the allegedly negligent decisions in a particular case must be examined *individually* to determine if they are' protected by discretionary function immunity."[47] The superior court did that in this case, and OCS has not challenged its individual determinations. We therefore turn to Reasner's argument on this point.

### b. OCS was not entitled to summary judgment on Reasner's claims that OCS failed to maintain the requisite "minimum contacts" with her foster family.

The superior court granted OCS summary judgment on Reasner's claim that OCS had failed to conduct the requisite number of home visits while she was in foster care, because it found that OCS's policy governing such "minimum contacts" was protected by discretionary function immunity. Reasner argues that this conclusion was

---

[45]     *State, Dep't of Health & Soc. Servs. v. Mullins*, 328 P.3d 1038, 1043 (Alaska 2014) (quoting *R.E. v. State*, 878 P.2d 1341, 1349 (Alaska 1994)).

[46]     *State, Dep't of Corr. v. Cowles*, 151 P.3d 353, 358 (Alaska 2006).

[47]     *Mullins*, 328 P.3d at 1044 (emphasis added) (quoting *Cowles*, 151 P.3d at 359).

erroneous with respect to the OCS policy in place between January 1998 and April 1999. We agree with Reasner.

OCS amended its policy governing minimum contacts with foster families in January 1998. Before that date OCS's policy required OCS to conduct at least one face-to-face family contact every three months, and "in-home contacts to family [were] required in addition to placement contacts with the child." But OCS's policy also provided that "[a]ctual delivery of this minimum service level [was] dependent on workload size." Given this "workload size" caveat, the superior court determined that OCS was protected by discretionary function immunity under the pre-1998 policy because "the actual number of contacts is discretionary rather than mandatory."[48]

When OCS amended the policy in January 1998 it retained the requirement of "in-home contacts to family . . . in addition to placement contacts with the child." But it omitted the "workload size" caveat and allowed "[c]hanges in service level [to] be made only after a service level review." Reasner argues that OCS is not protected by discretionary function immunity under the post-1998 policy and that, because this new policy was in effect for the last five quarters that she was in OCS's legal custody, she should be allowed to proceed on her negligent investigation claim.

We agree. The post-1998 policy language allows for either "no discretion" or "only discretion free from policy considerations," at least until a "service level review" has been conducted.[49] Because this new policy was in effect for a period of time during which OCS had legal custody of Reasner, she should have been allowed to proceed on her negligent investigation claim.

---

[48]    Reasner has not challenged the superior court's conclusion and we do not address the court's ruling on that point.

[49]    *Mullins*, 328 P.3d at 1043 (quoting *R.E.*, 878 P.2d at 1349).

### c. Reasner has not challenged the actual grounds of the superior court's grant of summary judgment on her ICWA-related claims.

Reasner also asserted below that OCS has policies and procedures adopting provisions of the Indian Child Welfare Act (ICWA) and that her OCS caseworkers failed to follow these policies. The superior court found that OCS's "adoption of policies and procedures intended to implement ICWA requirements represent[s] its efforts to balance the requirements of federal law with state economic and political policy factors" and that a violation of those policies was therefore protected by discretionary function immunity. The superior court was careful to note that it was only ruling on Reasner's specific claims and that "[i]t is possible that there are claims regarding violation of OCS procedures implementing ICWA that would not be protected by discretionary function immunity."

On appeal Reasner argues that this was error because she is merely alleging "a straightforward negligence claim against OCS and cit[ing] OCS's violations of the law as *evidence* of OCS's negligence." She therefore argues that the superior court erred in granting summary judgment to OCS "on the ground that these authorities do not create a direct cause of action."

But as we have just explained, the superior court granted summary judgment to OCS on Reasner's ICWA-related claims because it found that OCS is protected by discretionary function immunity, not because the claims do not create a direct cause of action. Absent a passing assertion in her reply brief that "OCS incorporated provisions of [ICWA] into mandatory policy," Reasner has not challenged the actual basis for the superior court's decision. We therefore affirm the superior court's grant of summary judgment to OCS on Reasner's ICWA-related claims, but we

express no opinion whether the superior court was substantively correct when it determined that OCS is protected from those claims by discretionary function immunity.

**2. There is a genuine dispute whether Reasner's foster parents completed the required training**.

Reasner alleged that OCS negligently monitored the foster home in part because it did not require her foster parents to complete mandatory foster parent orientation or follow-up annual training.[50]  The superior court granted OCS partial summary judgment on this claim because it found that Reasner "ha[d] not provided any evidence that the required orientation and trainings did not occur."  We disagree.

As we have explained above, a court must construe all reasonable factual inferences in favor of the non-moving party.[51]  "[S]ummary judgment is appropriate only when no reasonable person could discern a genuine factual dispute on a material issue."[52]  Here, Reasner presented the Allisons' training record from Alaska Center for Resource Families, which indicated that the Allisons had not completed the necessary training at that facility.  Reasner also presented evidence from a 1998 adoption home study indicating that the Allisons "ha[d] been slow to become comfortable with [support] services."  Finally, Reasner provided an internal OCS email from January 1998 stating "[o]ne of the items we are planning is to require that [the Allisons] go to our adoption preparation series.  They have been invited a number [of] time[s] over the past years.  When they have attended, they have only come for one session, so they have never completed the series."  OCS, on the other hand, presented no direct evidence showing that the Allisons had actually completed the training and admitted that the Allisons'

---

[50]    *See* former 7 AAC 50.433 (1990).

[51]    *Christensen v. Alaska Sales & Serv., Inc.*, 335 P.3d 514, 520 (Alaska 2014).

[52]    *Id.*

licensing file was no longer available because it had been purged three years before "as part of OCS's routine file retention policy."

Under Alaska's lenient standard for surviving summary judgment, there is a genuine dispute as to whether the Allisons had completed the required courses and training. Summary judgment on this issue was therefore inappropriate.

### 3. The superior court correctly concluded that OCS was not entitled to summary judgment as to causation.

On cross-appeal OCS argues that Reasner failed to demonstrate a causal nexus between OCS's failure to require the Allisons to complete the required training and Reasner's harm. But reasonable inferences from the admissible evidence demonstrate a dispute as to this causal connection. For example, a reasonable person could infer that if the Allisons had completed the required training, they would have been able to identify warning signs of sexual abuse and taken steps to protect Reasner. Furthermore, if the Allisons did fail to complete the required training, then OCS might have been required to remove Reasner from their home because a foster home must be licensed every two years. Given these possible inferences, a reasonable person could discern a genuine factual dispute as to whether OCS's failure to remove Reasner was also a proximate cause of her harm.[53]

We also reject OCS's argument that its failure to make quarterly in-person visits between January 1998 and April 1999 lacks a causal nexus with Reasner's harm. The superior court found that "[r]easonable jurors could conclude that 'but for' the lack of contact, OCS would have become aware that Ms. Reasner was being abused and/or that it would have more fully investigated the reports that she was being sexually and/or physically abused, which could have resulted in OCS substantiating the reports and

---

[53] *See id.*

taking action to protect her from harm." Although the superior court's analysis should have focused on whether a reasonable person could discern a factual dispute, and not on whether a reasonable juror could find for Reasner,[54] we agree with the superior court's ultimate conclusion that summary judgment on the issue of causation was inappropriate.

## IV. CONCLUSION

For the reasons stated above, we REVERSE the superior court's summary judgment order in part and REMAND for proceedings consistent with this opinion.

---

[54] *See id.* at 520-21.